On an application for a rehearing, in this case, which was determined in May last, ante 30, it was urged, that—
Any kind of defect in the thing sold, is not a ground for the action of redhibition ; such defects alone are considered as render the thing absolutely unfit for the purpose for which it was intended in commerce, or such as so far diminish its utility, or render it so inconvenient, that it is presumable, that if these defects had been known to the buyer, he would not have bought at all, or would have bought at a reduced price. Civil Code, 356, art. 67.
The seller is not accountable for the apparent defects or vices which the buyer could have seen himself; as for example, if a horse had lost his eyes, the buyer cannot complain of a defect, of which he is ignorant, only through his own fault, any more than those the seller may have declared to him. Id. art. 69. Vigilantibus non dormientibus leges subserviunt.
The redhibitory defects, owing to the sickness or infirmities of slaves, consist principally in the three following diseases, viz. leprosy, *204 madness and epilepsy. With regard to other ailments or infirmities, with which slaves may be attacked, they form or constitute redhibitory defects, only when they are incurable by their nature. So that the slave subject thereto, is absolutely unfit for the services for which he is destined, or that his services are so difficult, inconvenient or interrupted, that it is presumed, that the buyer would not have bought him at all, if he had been acquainted with the defects, or that he would not have given so high a price, had he known that the slave was subject to that sickness. Id. 358, art. 80.
According to this part of the law, which being clear and free from ambiguity, the judges are forbidden to disregard the letter, under the pretence of pursuing its spirit. (Id. 5, art. 13,) any infirmity, other than one of the three mentioned, in order to constitute a redhibitory defect, must be incurable in its nature, and render the slave absolutely unfit for the services for which it is destined; or at least render those services so inconvenient, difficult and interrupted, that it is to be presumed, that if the buyer had been acquainted with these defects, he would not have bought at all, or at least, not for the price given.
*205 The testimony of Dr. Dupuy shews that the infirmity of the slave must have been apparent at the time of the sale ; but we have a better proof of this. The plaintiff himself admits in his answer to our interrogatory, that he knew the infirmity of the slave before he signed the act of sale. So that, it cannot be presumed, that he would not have bought her had he known the infirmity. The obligation of the seller to declare the defects of the thing sold, does not hold true; because the defect was apparent, and the purchaser knew the infirmity. Scientia utriusque par pares facit contrahentes.
An infirmity is incurable either by its nature or by the progress it has made, or by the ignorance of the physician. When an infirmity results from the injury of one of the organs necessary to life, as the brain, the heart, or the lungs, it is, and will always be, incurable by its nature. It is also said, though not very correctly, to be incurable by its nature, when the healing art has no remedy to cure it; as the yellow fever, the bite of a rattlesnake in one of the arteries, the hydrophobia, or rabies canina, &c., which one day may cease to be incurable. When an infirmity, *206 curable by its nature, has been neglected or ill-treated in its beginning, it reaches a stage where it ceases to be curable, and is said to be incurable by the progress it has made. When the infirmity is such that the physician called to heal it, is ignorant of the means of cure, it is said to be incurable by the ignorance of the physician.
Out of these three classes of incurable infirmities, the law gives the redhibitory action, in the case of those which are incurable by their nature. Indeed all infirmities, incurable by their nature, do not give rise to the redhibitory action. The infirmity must be such as to render the slave absolutely unfit for the service, &c.
The only proof adduced by the plaintiff is, that on the 17th of May, eight days after the sale, he had the slave examined by Dr. Dupuy, to whom she appeared very sick, and who supposed her to be incurable, but the doctor is neither positive as to the incurability of the disease, nor explicit as to the causes of it. Admitting that he was, does it follow that the disease was incurable, on the day of the sale, eight days before ? One might as well conclude, that, because a disease was incur *207 able on the last day of December, it was so on the first of January. Without having studied either Hypocrates or Celsus, every one who has the use of his reason, knows that there are diseases so rapid in their progress, that they become incurable in one day, one hour; nay, in one minute.
To say that the redhibitory action is taken from the buyer, only when he knows the nature of the disease, i. e. that it is incurable, is a cavil. The nature of a thing is what constitutes it what it is. Rerum natura illa est, quâ res quœque consistunt.
The nature of things is known only to the supreme maker of them. The only thing, the knowlege of which we, ignorant men, are by our limited nature, permitted to attain, is the effect produced by the nature of things. We are all ignorant of the nature of fire, but we know it is warm by its nature. We are ignorant of the nature of matter, but we know it is indestructible by its nature. We are all ignorant of the nature of infirmities, but we know that some of them are incurable by their nature. To say that the nature of fire is warm, that of matter indestructible, that of an infirmity incurable ; is to say what constitutes *208 fire to be warm, is warm, what constitutes matter to be matter,is indestructible; or what constitutes an incurable infirmity, to be incurable, is incurable, is nonsense, because it is giving attributes to entes rationis.
An infirmity, incurable in is nature, is one which, in consequence of what constitutes it what it is (which we have agreed to call its nature) admits of no cure. If the intention of the legislature had been to give the redhibitory action to a purchaser, for all incurable infirmities, certainly it would not have made use of the words, incurable by their nature. If the maxim inclusio unius est exclusio alterius be correct, it is clear, by the words of the statute, that the redhibitory action is given only for infirmities incurable by their nature. Very little reflection will be needed to satisfy us, that the action is not given in cases of infirmities, incurable by the ignorance of the physician, or by their progress.
In the first case, it would be unjust to let the seller suffer, in consequence of the error of a man whom he had not chosen.— Factum suum cuique, non adversario, nocere debet. De reg, jur. 155. In the second, it must be apparent, from the nature of things, that the buy *209 er may perceive the infirmity, and if he purchase, notwithstanding this, volenti non fit injuria.
Certainly, if the plaintiff, endowed with the faculty of penetrating into the mysteries of nature, had seen that the slave’s disease was incurable, or would terminate fatally, no one can believe that he would have bought.
But, spei emptio est. ff. de contr. empt. C. 8. When a man buys the casting of a fisherman’s net, who is silly enough to think the bargain would have been made, if the buyer had known that no fish would be caught. He bought with the hope of fish being caught. So he, the plaintiff, bought for $500, the hope of curing a slave, who one month before, had been sold for $900. That he bought such an hope is proven, by his placing the slave under the care of a physician, and having her nursed for a month, although he was informed the disease was incurable, his making no claim, and neglecting all means of preserving his pretended right till his hope had entirely vanished.
The plaintiff, as is often the case with the purchaser of the casting of a net, has been disappointed, yet he must pay, veluti cum jactum *210 retis a piscatore emimus,aut indaginem plagis positis á venatore, vel pantheram ab aucupe: nam etiamsi nihil capit, nihilominus emptor pretium præstare necesse habebit. ff. l. 11, in fine de actionibus empti et venditi.
Another reflection will suffice to refute the idea that the parties contemplated that the vendee’s claim would depend on the issue of the disease. Any one, even the least acquainted with the human heart, knows, that every one, however unfit he may be for the purpose, is more willing to trust his own concerns to himself, than others. Can it be believed that the defendant, selling for $500, a slave, who a little before had cost him $900, intended to trust his cure to the plaintiff, a bachelor, unacquainted with the healing art, in the expectation, that in case of his cure, the benefit would result to the purchaser, and in case of a fatal termination, the loss would be the seller’s.
The infirmity was apparent and known to the purchaser. It was not incurable either in its nature, nor by its progress, at the time of sale. At least no proof is administered of such incurability; none certainly results from the death of the slave. Every treatise of logic warns us against the sophism, under the title *211 non causa pro causâ; such a reasoning reduced to its simplest expression, being post hoe, ergo propter hoc, which is absurd.
Martin, J.
observed, that the defendant suggested, that the court erred in affirming the judgment of the parish court, because the disease was not incurable in its nature, and did not render the slave absolutely unfit for the service for which she was intended; nor render her services so inconvenient, difficult and interrupted, that it may be presumed, that if the buyer had been acquainted with the disease, he would not have bought her at all, or would not have given so high a price. Civ. Code, 356, art. 67, 69, id. 358, art. 80.
That the counsel seemed to believe, that it is necessary, that all these circumstances should occur, and that a disease incurable in its nature, is not per se a redhibitory one: that the absolute unfitness of the slave, for the services for which she was destined, &c. must be also shewn to exist.
That he could not see how it can be doubted, that the sole circumstance of a slave being attacked with a disease, which the medical *212 art cannot cure, and must shortly terminate fatally, is a redhibitory one.
That the chief enquiry is, what was the disease of the slave in the present case ?
That the disease was so, when Dr. Dupuy was called, cannot be doubted. He swears, he thought her incurable. On the second day she appeared in a state of complete marasme, with all the symptoms of a chronic disease, in its last stage. He attended her carefully, but to no purpose. She died on the 18th day. He supposed the disease was seven or eight months old. Dr. Dow informs us, he was called to visit her soon after the defendant bought her, and he recognised her as a former patient of his, whom he had attended seven months before.
That the defendant informed the court, that he purchased the slave about seven months before he sold her to the plaintiff; and some days after, discovered “ that she was sick, and had been so at the time and previous to the purchase; and not knowing that he had a redhibitory action against his vendor, he caused her to be sold at auction, and the plaintiff purchased her.”
He did not cause the sickness to be dis *213 closed to the bidder; and when the plaintiff informed him that she was sick, he did not admit that she was, and that this was the reason he sold her; but falsely declared, he did not know that she was, but meant to sell her (as he had bought her) with a warranty of redhibitory diseases.
That the impression on the mind, after maturely weighing the testimony, is, that at the time Dr. Dupuy saw her, she laboured under a disease then incurable; the seeds of which existed in her for nine or ten months before the sale.
That a distinction was attempted to be made between a disease incurable in its nature, and one curable in its origin, but in a stage of incurability, on account of its progress; that he had conversed with medical men on talents, on a point like this; and was not able to draw correct information from them or medical books; and they hardly recognise any disease, which, in its incipient stage, may not yield to the healing art. Surely if a vendor is not permitted to sell a slave attacked with a disease (if such there be) incurable in its incipient stage, it cannot be lawful to sell him attacked by one, which might once have been cured, but has *214 become absolutely incurable by its progress, without disclosing the fact; it is difficult to see any difference in the turpitude of either sale, and it is believed, there is not any in the illegality.
That it was said, that the court ought to have reversed the judgment of the parish court, because, from the circumstance of Dr. Dupuy swearing that he conceived the disease incurable when he was called, the judge has drawn an illogical conclusion, that it was so at the time of the sale.
The court often said, that on questions of fact, the conclusion of a jury or of a judge a quo, would have considerable weight with it, and could not be disregarded, unless it appeared manifestly wrong; and in a late case, its appearing so, they thought it best to send the record back, with directions to the judge to submit the question to another jury. When a case is submitted to a jury on distinct issues of fact, unmixed with any legal questions, the law makes the finding of a jury conclusive in this court.
That the act of sale, bears date the 9th of May, and the doctor attended her, for the first time, on the 17th. So that during the *215 intermediate days, the disease may have reached its stage of incurability, and so non constat, that the disease was incurable on the day of sale: the neglect of the vendee to have the slave attended by a physician, is also presented as a probable cause of the disease having reached its stage of incurability.
The defendant might have put this question beyond a doubt, by enquiring from the doctor, whether he conceived that had he been called eight days before, he might have cured her. Many diseases are deceiving in their appearances, and often a resort is not had to medical men, till family remedies appear unsuccessful. If the defendant had thought it of any avail, he might have questioned Giguel, the friend under whose care the plaintiff placed the slave, and he might have known what care was taken of her. Perhaps the plaintiff was lulled into security by the false statement of the defendant, that he did not know that a slave, whom he sold after keeping her two months, had any ailment.
That the merits of the case are certainly with the defendant; certat de damno vitando, he seeks to avoid a loss, by rescinding a sale to which he was induced to accede, on the as *216 surance that the vendor knew not of any ailment in the slave. The defendant certat de lucro captando, unconscientiously to gain the price of a slave really worth nothing at all. He seeks to enrich himself by the loss of the plaintiff. The former must, therefore, be held to very strict proof of his allegations.
That much stress was laid on the plaintiff’s knowlege of the sickness of the slave, before he executed the deed; a circumstance which is presented as destroying his right to the redhibitory action. This would be the case, if he had not insisted on the warranty. But the representation of the vendor, that there was a warranty against redhibitory defects, appears to have induced him to sign the act, and pay the price. The knowlege of the vendee does not prevent his availing himself of the redhibitory action, says Pothier, when he has stipulated that there should be a warranty. Traité du contrat de vente, n. 209, ff. l. 4, sec. 5, de dolo et met. But in the present case, the plaintiff, though he had discovered something was the matter with the slave, appears to have been ignorant that her indisposition was a tedious one. His vendor assured him he had no knowlege of the slave *217 being sick, though this knowlege was the inducement he had to sell; and hinted, that if the disorder was a redhibitory one, the vendee was secured, by the clause of warranty.
That it is objected, that the court erred in affirming the judgment of the parish court, who did not consider the case in its true light, that the vendee bought for $500, the hope of curing a slave, who had, but one month previous, sold for $900; and the proof of this is presented in his placing the slave in the hands of a physician; causing her to be treated as sick, during one month, though the physician had told him, he supposed her incurable, and not claiming, or performing any act conservatory of his pretended right, till that hope had vanished.
This care, which the plaintiff is now said to have taken of the slave, must acquit him of any neglect of her cure, and repel the idea that it was for want of attention to her, that the disease so far progressed, while she was in the plaintiff’s hands, as to reach its period of incurability.
That every thing on the record contradicts the assertion, that the plaintiff did intend to purchase any other but a sound negro; atleast *218 any one free from an incurable disease. The auctioneer was directed by the defendant to sell a negro, without disclosing any thing of her being sick; though the vendor knew she was, and this circumstance alone induced him to sell. It is true, she was sold for a little below the price at which the defendant had bought her. But this circumstance happens daily in sales at auction.
The judge thought there was nothing in what was offered, to induce the court to grant a rehearing, or that could authorise it. The plaintiff had fully proven his case. He might have demanded the rescission of the sale, on account of the false declaration of the vendor, that he knew not of any ailment of the slave; but he had put it on the fairest ground. He had stated, he bought a slave, whom he knew before the execution of the act of sale, but not when he bid her off, to be sick. He knew not whether the disease was curable or not; he hesitated to pay his money, and paid it on the assurance, that if the disease was incurable, his money would be returned. The event has made what was doubtful certain,
He concluded that no rehearing ought to be granted.
*219 Mathews, J.
observed, that he had attentively considered the reasons offered on the part of the appellant, for a reconsideration of this case, and was not able to discover that justice, or a proper application of the principles of law on which it depends, require any change in the judgment heretofore pronounced.
The nature of the action, the evidence on which the respective rights of the parties rest, and the law that must govern the case, had been so fully and satisfactorily examined and explained by judge Martin, that he deemed it scarcely necessary to add any thing to what has been said.
The plaintiff’s right to recover, depends on a proper interpretation of the 80th art. of the Civ. Code, wherein it treats of the warranty of defects of things sold, and redhibitory vices.
This law, after enumerating three distinct cases by name, as redhibitory defects, proceeds to express generally, that all other diseases and infirmities which are incurable by their nature, so that they render the slave subject thereto, unfit for the service for which he is destined, &c., do authorise a redhibitory action. The difficulty in the interpretation of *220 the article, consists in the proper meaning to be given to the words, incurable by their nature. He had made some enquiries, and looked a little into the subject of nosology, and had not been able to discover in the classification of diseases, any class of them which are said to be incurable in their nature. It is certainly the nature of all diseases to give pain, and interrupt more or less the ordinary pursuits and labours of men, and to cause death, especially “ when any of the principal organs of animal life are attacked.”
He believed the just and true meaning to be given to our laws, on the subject of diseases in slaves, is that whenever the evidence in the case shews that the slave was diseased at the the time of sale, and that such disease progresses without interruption, so as to entirely destroy the utility of the slave, it ought to be considered as a redhibitory defect ; unless it appears clearly that the purchaser knew the nature and extent of the disorder, and consented to purchase under all risks. This would be purchasing the hope or chance of gain. But it is clear from the evidence in the present case, that St. Romes had no intention of making such a purc *221 hase. He bought with a guarantee against the diseases provided for by the Civ. Code; and from all the circumstances shewn by the testimony, the court was of opinion that the slave was, at the time of sale, afflicted with one of those diseases.