*BAUDIN* vs. *ROLIFF* & *AL.* *ROBERTSON* & *AL. Inter. pleaders.*

Case 2.
1ns165
47 188
Case 2.
1ns165
49 397

APPEAL from the court of the third district.

PORTER, J. delivered the opinion of the court. The petitioner alleges that in the year 1817 he recovered judgment against the heirs of Phillip L. Alston, for the sum of $5360, with

A judgment of dismissal, is nothing more than one of nonsuit, and does not form *rem judicatam* on any of the maters at issue.
When in tra-

East'n District.
*April*, 1823.

BAUDIN
*vs.*
ROLIFF & AL.

cing title a judgment makes part of the muniments of an estate it is not necessary to give the proceedings on which it was founded.

Strangers to a judgment cannot be received to attack it on the ground of irregularity, or being rendered on insufficient evidence.

Payment of the price by the bidder at a sheriff's sale is indispensable to a transfer of the property, unless the plaintiff waves it.

But if the defendant obtains credit for the amount, he cannot object to any arrangements by which the plaintiff has released the purchaser.

The vendees consent may be shown by evidence *dehors* the deed of sale.

To set aside a conveyance on the ground of

interest at five per cent. from the 16th February 1814, and that the said sum was ordered to be made out of a tract of land containing 1000 arpents, situated on the Bayou Tunica.

That this amount of $5360 was bid by the ancestor of the heirs, on the 14th of August, 1802, for the said tract of land, at that time, and by subsequent proceedings of John O'Conner, alcade of the fourth district, sold as the property of Oliver Pollock—that it had been since sold in due form of law to the petitioner, in virtue of his judgment against the heirs of Alston, for the sum of $4490, by reason of which he had acquired a title to the premises, and had been put in possession of the same.

That certain persons, viz. Oliver Roliff and others, had illegally entered on the premises, and though often requested, had refused to remove therefrom.

Samuel Robertson and wife filed their bill of intervention, in which they stated that they were the lawful owners of 500 acres of land, situated in the parish of Feliciana, the title to which they acquired in the following manner. That a certain Oliver Pollock being the proprietor of 2000 acres of land, situated on the river Mississippi, including the mouth of the

Bayou Tunica, did, on the 23d day of May, in the year 1801, by deed of conveyance, legally and duly executed, sell and dispose of the said tract of 2000 acres, to a certain Janett Pollock; that afterwards, on the 15th September 1802, the said Janett Pollock sold the undivided half to a certain Lucilla Pollock, who by last will and testament devised the undivided half of this portion owned by her, to Mary S. Robertson, one of the petitioners.

After thus exhibiting the nature of their title, the interpleaders go on to state that they may be injured by the proceedings carrying on against the original defendants; they therefore pray leave to intervene—be made parties, and that the right to the land and possession of it, may be decreed to them.

They were admitted as parties, and subsequently filed the following pleas:

That Baudin had not a good title to the premises; that they, the interpleaders, had— and that in addition thereto they held the land by 10 years prescription.

The cause was submitted to a jury, who found a general verdict for the plaintiff, there was judgment accordingly, and the defendant appealed.

East'n District.
*April*, 1823.

BAUDIN
*vs.*
ROLIFF & AL.

its being fraudulent, there must be fraud in vendor, vendee, and the alienation must have been made to injure creditors.

The decision of a jury always prevails on questions of fraud.

And if it is not clear that the verdict was founded on it, the cause will be remanded for a new trial.

East'n District.
*April*, 1823.

BAUDIN
*vs.*
ROLIFF & AL.

In this court, it has been contended by the plaintiff, that all the matters and things now in contest between the parties in this action, have been definitively settled in a former suit.

The decree, which is contended to have that effect, was given in an action in which the present plaintiff sued the heirs of P. L. Alston, to compel them to comply with a purchase made by their ancestor, of a certain tract of land sold to satisfy a judgment he had obtained under the Spanish government against O. Pollock. In his petition the plaintiff alleged that the reason why Alston had not complied with his contract, was, that certain persons, and among others the interpleaders in this cause, had set up a title to the premises—and he prayed that they might be compelled to produce their title, if any they had, in order that it might be adjudicated on, and that they might also be compelled to deliver up possession of the premises, as the property of Oliver Pollock.

To this petition, the parties now intervening put in a defence, containing a general denial of all the allegations therein.

On the issue thus joined, the court decreed

that the petition should be dismissed, and the
defendants have judgment against the plaintiff for costs of suit.

The plea of *res judicata* is not sustained by this judgment.    If it was at all final, it was in favour of the defendants, not against them; but we consider it one of non-suit, which settled nothing but the costs in that cause, and left undecided all questions growing out of the pretensions of the respective parties.

After this judgment we find another on the record, for the defendants generally. Whether the parties against whom the petition had been dismissed, were included in this, and the appeal taken from it, we cannot discover, but considering it as if they were, the result is the same; for the judgment of the district court on the second trial after the cause was remanded, is confined expressly to the matters in dispute between Baudin, and the heirs of Alston, and reserves the rights of all the other parties.

Proceeding, therefore, to examine the case on its merits, the first thing to be inquired into is the title of the plaintiff.

He shows a grant from the Spanish government to Trudeau for the premises, and a sale

BAUDIN
vs.
ROLIFF & AL.

from Trudeau to Oliver Pollock, and so far no particular objection has been made. The next link in the chain, it is contended by defendants, is wanting, and they object; that the foundation of the plaintiff's claim is the proceedings had in the year 1802, against O. Pollock, and that instead of producing a copy of these proceedings, he has only offered in evidence the judgment which was the result of them. We are, however, of opinion that it was not necessary for the plaintiff to do so, and that when, in tracing title, a judgment makes a part of " the muniments of an estate," that it is not necessary to give in evidence all the proceedings on which it is founded. We cannot indeed see on what ground, or for what useful purpose, it could be required. If the appellants held the property in right of Oliver Pollock, we could not inquire collaterally into the merits of the judgment. *Dufour* vs. *Camfranc*, 11 *Martin* 604. If they are strangers to him, there is still less reason to permit them to assert his privileges, or dispute the validity of the judgment against him. It is not introduced as binding *per se* on their rights, but as an introductory fact necessary to make out the chain of title. We do not know that

Pollock himself would oppose it, so that third parties might in this way obtain a benefit for a defendant, that he did not wish to profit by himself, but we understand the rule to be, *invito benificium non datur. Dig. liv. 50, tit. 17, l.* 69.

The same answer must be given to the third objection, as to whether the attorney in fact, who represented Pollock, was regularly authorized to do so, and to that which complains that it is not shown that Conway was subrogated in Baudin's rights. The evidence on which the Spanish tribunal directed the property to be sold to satisfy both the balance due Baudin on the judgment, and the money which the surety had already paid, is not before us. We must presume, until the contrary is shown, that Conway was duly subrogated in the rights of the creditor he had paid, more particularly when that creditor joins in a petition that a sale should be made to satisfy the surety. The appellant has doubted whether such subrogation could be made under the Spanish law, but it appears quite well settled that it could. *Curia Phillipica, lib.* 2, *c.* 6. *Cesion, nos.* 40 & 43.

It is next urged that there was a novation

East'n District.
*April*, 1823.

BAUDIN
*vs.*
ROLIFF & AL.

of the debt due, and we have been referred to several documents from the 185th to the 195th pages of the record in support of this position; but on examination we see no ground whatever for it to rest on. The first instrument is one in which the obligor expressly binds himself as surety for the principal debtor, Pollock. The second is the security furnished by the executor of Conway, in consequence of having all the property adjudicated to him; and the third is a change in the surety furnished by the executor. Even if they had operated as a novation, that might have been a question between Baudin and Pollock, but cannot be agitated now. Such a doctrine would render it nearly impossible to find bidders at sheriff sales. For men would not buy property under the obligation to enter into all the questions discussed on the trial between plaintiff, and defendant, and try the cause over again in which the execution issued.

The next objection, and that mainly relied on by the defendant, is that the right, title and interest of Pollock to this land never passed to Alston the purchaser, and consequently that Baudin, in buying Alston's right, did not acquire a good title to the premises in

question.   In support  of this position, it has been principally contended, that Alston bought the land on a  judgment in favor of Baudin and  Conway, that  he  never  paid the price, and that not having done so the title was not in him, as it did not pass by the adjudication, without the payment of  the purchase money.

That the payment of the price, by the bidder at a  cash sale by a sheriff, is indispensable to a transfer of the property, if required by  the plaintiff at whose suit the sale takes place, we concede.   But this condition is one which is  introduced for  the  benefit of  the person to whom the money is to be paid, and consequently may  be  waved  by  him  if  he thinks fit.   If he chooses to give a receipt for the sum for which the property sold, and ac-knowledge satisfaction on the execution, the title will vest in the buyer, although the latter may have  given his obligation to pay at a distant day, or  even have  obtained a  release without making any  payment whatever.  We regard the payment as a question entirely between the person at whose  suit the property is sold, and  the  bidder, one  with which the owner of  the property has nothing to do except to insist that their arrangements shall

not deprive him of the right to be credited on the judgment for the amount for which the property was stricken off. The plaintiff under a judgment in his favor, like the vendor by private sale, may release the purchaser if he chooses, provided he gives the defendant the benefit of the proceeds. The right to abandon the price altogether, implies that of modifying it as he chooses.

In the case now before us Baudin, either from circumstances over which he had no control, or from other reasons, let a number of years elapse before he brought suit to make the vendee comply with his contract, but in that suit he obtained judgment against him for the price. This surely was an affirmance of the sale, for it was a claim to have the benefit of it. An execution issuing under this judgment might legally be satisfied out of the land which formed the consideration of the contract on which that judgment was rendered. For the title vested in the buyer, the moment the plaintiff had his demand to enforce the sale, sanctioned by a judgment of the court.

The case of *Durnford* vs. *Degruy's syndics*, 8 *Martin* 220, contains nothing contrary to this, for there the plaintiff insisted on having the be-

nefit of the forfeiture created by the buyer's East'n District.
failure to comply with his bid, and claimed the *April*, 1823.
right of selling the property again. The obser-
vations of the court must be understood in re-
lation to the facts then before them.

BAUDIN
*vs.*
ROLIFF & AL.

It is contended that the land was sold at
the suit of Conway and Baudin; that Baudin
alone brought an action against the purcha-
ser, and that it required the plaintiff to
show that *both* the persons, for whose benefit
it was disposed of, should have affirmed this
contract by suing for the price. The judg-
ment of the Spanish tribunal was, that the pre-
mises be sold to pay Baudin what was due of
the original judgment, and to satisfy Conway
the surety, for what he had already paid for
Pollock. As the amount which Baudin has
received does not appear to exceed the ba-
lance due him, we think there is not any
weight in this objection. Conway could only
claim a share in the execution in case of an
overplus.

Disposing of these objections, brings us to
the title of the defendants, and the question
which arises on it, is one of greater difficulty
than any other the case presents. They claim
under a sale of the premises from Oliver Pol-

lock to Janett Pollock, dated on the 23d March 1801.

The sale is attacked by the plaintiff on several grounds,

1st. Because the vendees assent to the conveyance is not given in the instrument by which the land is sold to him. This objection we think unfounded. Consent may be shown by evidence *dehors* the instrument, and in this case it is proved by the buyers afterwards conveying part of the premises, and declaring they were the same which he had acquired by deed from O. Pollock. *Bradford's heirs* vs. *Brown*, 11 *Martin*, 217.

2d. Because, it was made under circumstances which render it subject to a just suspicion of being done with a fraudulent design. Admitting this to be proved, we would not be authorised to annul the sale; it is not a just suspicion of fraud, but fraud itself, that should be the result of the evidence.

Whether the sale was fraudulent or not, is the main subject of inquiry. If it was not, it appears to us to have legally passed this title to Pollock, antecedent to the sale to Alston. If it was, the defendants are without title. Fraud is never presumed, except in cases of

bankruptcy, it must be proved, and it must be
proved both in the vendor and vendee, with
the additional circumstance that the aliena-
tion has produced an injury to creditors. The
facts from which it may be justly inferred, it is
impossible to state. Each case must depend
on its own circumstances. In this before us, we
are unable to say that it has been satisfacto-
rily established.

We are prevented from acting on this con-
clusion and giving judgment accordingly, by
reason of a verdict obtained by the defen-
dant in the court below. It has been repeat-
edly decided in this court that in cases where
fraud was put at issue, we should readily
yield our conclusions, to that which twelve of
our fellow citizens, hearing the witnesses, and
knowing the parties, had formed on the same
matter. The difficulty of acting in obedience
to this rule in the instance before us, arises
from the loose manner the pleadings are made
up. It does not appear from them, that fraud
was alleged or denied, though from the proof
adduced, and the course the cause has taken, it
is extremely probable it was submitted to the
jury and entered into the consideration on which
their verdict was founded. Under these cir-

East'n District.
*April,* 1823.

BAUDIN
*vs.*
ROLIFF & AL.

cumstances we think the safest course we can adopt, is to remand the cause for a new trial. The opinion now delivered on the various points made respecting the written title of each party will probably narrow the enquiry on the next investigation, to the single question, whether the conveyance from O. Pollock to J. Pollock was fraudulent, or not. On such an issue, a jury are so emphatically more competent than this tribunal to arrive at the truth, that justice to the parties, requires the case should be acted on by that body.

The plea of prescription does not appear to us to be sustained, the record shews that a suit was pending in the beginning of the year 1803 between Hamilton Pollock in behalf of Janett Pollock, and the present plaintiff in regard to this land, and we cannot learn that it was terminated ten years before the suit commenced by Baudin in the year 1814. The fact of possession also is not so clearly established as it might be; but admitting that it is fully made out, the pendency of the suit interrupted the prescription.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed, and it is

further ordered, adjudged and decreed that
this case be remanded for a new trial and
that the appellee pay the costs of appeal.

*East'n District.*
*April,* 1823.

BAUDIN
*vs.*
ROLIFF & AL.

*Preston,* for the defendant, *Moreau,* for the
plaintiff.