MARK BOATNER *v.* SAMUEL SCOTT.

The Register of the Land Office and the Receiver of Public Moneys, acting as a Board of Commissioners for the adjustment of conflicting land claims, under the act of Congress of the 8th of May, 1822, have no power to revoke a certificate of confirmation once granted, nor to revise their own decisions touching the location of such conflicting claims, after rights have been acquired under them.

The act of Congress gives no appeal to the Commissioner of the General Land Office from the decisions of the Board; but he may withhold a patent, when satisfied that a certificate of confirmation has been unfairly obtained, and, perhaps, order a new survey, where the survey presented as the basis of a patent, is shown to vary from the boundaries mentioned in the original title.

A survey of a portion of the public lands, under an order from the Land Office, approved by the Surveyor General, is conclusive, unless it be shown that it deviates from the order.

A judicial avowal or admission by an ancestor, is as binding on his heirs, as it was on himself.

An admission made in the course of judicial proceedings, cannot be retracted to the prejudice of the adverse party.

A copy of a survey, certified by the Register of a Land Office of the United States to be a correct transcript of the original survey in his office, is admissible in evidence. The copy is properly certified by the officer having the custody of the original.

A copy of the certificate of the Commissioners for adjusting land claims in favor of a claimant, certified by the Surveyor General, is inadmissible. It should be certified by the Register of the Land Office.

APPEAL from the District Court of East Feliciana, *Johnson*, J. *Andrews*, and *J. P. Bullard*, for the plaintiff and appellee. *Turner*, and *Lawson*, contra.

BULLARD, J. The plaintiff asserts title to a tract of land containing six hundred and four acres and a fraction, which he holds under one Hendry, an actual settler, situated in the St. Helena land district. He gives a minute description of the boundaries, according to a survey under competent authority. He alleges that his

title was derived from the government of the United States, in vir-
tue of several acts of Congress, relative the adjustment of land
titles.    That a certificate according to law was issued in favor of his
vendor, Hendry, together with an order of survey, predicated upon
said certificate, and that every legal step was taken to entitle him to
a patent for said land.   He further represents, that the defendant,
well knowing the premises, and intending to injure and defraud him,
has intruded without any legal right upon the said land, and is in
possession of a considerable portion of the same, and refuses to de-
liver it up to the petitioner, to his damage five hundred dollars.
He, therefore, prays for a judgment for the land, together with
damages, and rents and profits.

The original defendant, Samuel Scott, in his answer, denied all
these allegations, and alleged that he had a good title to the land
possessed by him, derived from the government of the United
States, by virtue of several acts of Congress, which was duly and
legally located by the proper tribunal, constituted by the said acts
of Congress, and by their order of survey, dated the 1st of April,
1828.   He expressly denies that the said tribunal has any right to
alter, or change the said location, by any subsequent act.   He,
therefore, prays for a judgment for his claim of six hundred and forty
acres, as located according to the said order of survey.

The original defendant died *pendente lite,* and his heirs were
made parties.   The suit was brought in 1833, and finally the heirs
of Scott filed a new answer, in 1841, in which, after denying the
plaintiffs' title, they allege that in the original order of survey, upon
which their ancestor relied, the Board of Commissioners at St.
Helena erred, and that since his death his widow, in behalf of her-
self and her minor children, has, by regular and legal proceedings,
had the error corrected, and a new order of survey issued, and a
survey and location made which conforms with the plat of survey
made under the order of court.   They further say, that they and
the plaintiff, since the death of the original defendant, have con-
tested their respective pretensions before the Board of Commission-
ers at the Land Office in St. Helena, and that a final decision has
been rendered, establishing the boundaries above set forth, and con-
firming them in their right to the land contained in said boundaries.
They aver that this decision of the Commissioners, and the new

survey, duly made in conformity thereto, are conclusive upon the parties.

The present defendants further pleaded the prescription of ten years. There was a verdict and judgment for the plaintiff, and the present defendants have appealed.

The evidence of title to the *locus in quo*, exhibited by the plaintiff, consists in a certificate of the Commissioners at St. Helena, in favor of Micajah Hendry, for a section of land, as an actual settler, dated November 5th, 1819, an order of survey directing in what manner it shall be located, given by the same authority, dated April 2d, 1828, and a survey made in conformity to the order and duly approved, together with a sale from Hendry to the plaintiff.

The defendants' original order of survey bears the same date with that of the plaintiff, and there is a note or *postscriptum* to each, declaring that the land be equally divided between Hendry and Scott. It appears that there was a confliction and dispute as to the location of the land claims, and that the Commissioners settled it by giving to each an order of survey, with the above proviso. Afterwards, and even after the first answer was filed, the present defendants applied to the Commissioner of the General Land Office, to have the first order of survey, and the survey under it, annulled. In their petition, or *caveat*, they represent, that on the 1st of April, 1828, an order of survey was granted to their ancestor, Samuel Scott, by which he was deprived of a material part of his improvements, and dwelling house, and denied his proper quantity of land, although there is adjoining the conflicting claims unappropriated lands sufficient to give to both their full quantity. They complain, that the decision of the Commissioners, and the amendment thereto, are illegal: 1. because Scott, being the first settler, had a preference in the location, and had always claimed a particular point to which the northern line should run eastward, and by which Hendry, the original settler, had agreed to be bounded; and because the Commissioners ought to have decided, that Boatner had intruded upon the claim of Scott: 2. because the Commissioners violated the act of Congress, which requires, in cases of conflicting claims, where no conditional lines have been agreed upon, that an equal division should be made of the land claimed, allowing each party his improvements: 3. because the Commissioners should have included

the vacant land, so as to allow the legal quantity: 4. because a particular line had been acquiesced in by Boatner's vendor, and pointed out to Boatner as his line.

The Commissioner of the General Land Office referred the case to the Commissioners at St. Helena. In his letter to them, he says, ' from an examination of the papers, I think, that it will be advisable for you to investigate the subject fully, after notifying Mr. Lawson, and the parties interested, of the time when you purpose commencing such investigation, and upon its completion you will transmit *the testimony* to this office, accompanied by a report, and your views upon the case.'

The Commissioners reported, that after investigation they were satisfied, that there was a line agreed upon between Hendry and Scott, which had been disregarded by their predecessors in their order of survey of the two conflicting claims. Thereupon, the case was sent back by the Commissioner of the General Land Office, with the remark, that ' as the law expressly vests in you the power to determine the matter in question, this office, *without expressing any opinion* in the case, requests that you will give such directions respecting the claims of Scott and Boatner, as your judgment, after a full examination of all the testimony, shall dictate, and that you will give the requisite orders respecting the surveys, as soon as practicable.'

In pursuance of these instructions, the new Commissioners of the Land Office at St. Helena, on the 1st of April, 1839, confirmed the views of their immediate predecessors, and ordered that the boundary line between the parties should be established accordingly, and that the claim of Scott should be extended to the hollow ravine, or half mile post, west of the old school house, as marked by a black line on the diagram of Phillips' plat of survey, under the order of the court, and that the claim be surveyed accordingly.

Thus it appears, that, pending the present suit, between 1833 and 1840, a proceeding has been carried on, contrary to the protestations of the plaintiff, the result of which has been to change very materially the relative position of the parties. At the inception of the suit, the two claims had been adjudicated upon by the Commissioners as conflicting ones, so far as it concerned their location, and the Commissioners had ordered their survey and location in a particu-

lar manner. The defendant, Scott, in his original answer, had relied upon that location under the order of survey, and the plaintiff still urges,that it is conclusive. The present defendants now insist upon the new location, under the late decision of the Commissioners. This part of the case, therefore, presents two questions, which have been discussed, to wit : 1. Whether the location first made under the order of survey, could be annulled and set aside, either by the Commissioners themselves, or by the Commissioners of the General Land Office ? and 2. Whether the defendants are not precluded from setting up any other location, after relying in their answers upon that which was made under the original order of survey, and decision of the Commissioners ?

I. We will premise, that it appears clear to us, that the location of the two claims of Scott and Hendry were ordered, in 1828, after hearing both parties, and in virtue of the act of Congress, which authorizes the Commissioners to decide upon cases of conflicting boundaries. That act of Congress constitutes the Register and Receiver of Public Moneys a tribunal to decide between the parties, in relation to all such claims as conflict or interfere ; and it directs them to respect conditional lines, if any exist, and if not, to locate the claims in such a manner as to give to each party his improvements. In the case of *Boatner* v. *Ventris*, and that of *Newport* v. *Cooper*, we had occasion to consider this question, and we concluded, in that latter case, that the Commissioners had no power to revoke a certificate of confirmation once granted. 8 Mart., N. S., 645. 10 La., 160. If their powers be judicial in relation to conflictions, it is difficult to conceive, how, upon general principles, they can, long after rights have been acquired under their adjudications, revise them. If they are without authority to revoke or annul a certificate of confirmation, how can they reverse their own decision touching the location of conflicting claims ? No such power is expressly conferred by the act of Congress, nor does it appear that any right of appeal is given to the Commissioner of the General Land Office. He has a right to withhold a patent, whenever he is satisfied that a certificate of confirmation has been unfairly obtained, and, perhaps, to order a new survey in certain cases, whenever the survey, presented as the basis of a patent, is shown to vary from boundaries called for in the original title.

But it does not appear that the Commissioner, in this case, assumed to set aside the orders of survey first given. He referred the whole matter to the Register and Receiver; and the latest communication from that officer, of the 17th February, 1840, shows, that patents are withheld from both claimants, until the matter shall have been finally settled, and that the last decision of the Board has not been approved.

It is, however, contended, that the original decision of the Register and Receiver was a nullity, and that the postscript was added afterwards, *ex parte*. Even admitting, that the postscript, explanatory of the views of the Board, that the land should be equally divided, regard being had to the improvements made by the parties respectively, ought to be rejected, as not making a part of the decision, it is yet to be shown that the decision itself is void, or even voidable. The order of survey lays down specific boundaries, courses, and distances, and it is not shown that the improvements, as they existed at that time, were disregarded. The survey made under those orders, and approved by the Surveyor General, is conclusive, in our opinion, unless it be shown that it deviated from the order, which is not pretended. The land of the plaintiff was surveyed, and located by competent authority, in conformity to the order of survey, and was duly approved by the Surveyor General in 1832. That survey does not appear to have been set aside by the Commissioner of the General Land Office, and it is not pretended that it varies from the order and decision of the Board of Commissioners, although no patent has yet been issued, in consequence of the *caveat* of the defendants.

II. But even if these views should be erroneous, and supposing the matter still subject to the discretion of the Commissioners of the General Land Office, so far as the government is concerned, the other question presents itself, to wit, whether the present defendants are not concluded by the answer first filed? We have seen that the original defendant relied expressly upon his location, under the order of survey of the 1st of April, 1828, and even denied the authority of the Commissioners, to alter or change the location, by any subsequent act, and that he prayed for judgment for his land, as located according to that order of survey.

It is hardly necessary to say, that the judicial avowal or admis-

sion of the ancestor is as binding on his heir, as it is upon himself. It is equally clear, that an admission, made in the course of a judicial proceeding, cannot be retracted to the prejudice of the adverse party. The original defendant set up title under his certificate of confirmation, and the location of it in conformity to the order of survey, and his heirs cannot now be permitted to gainsay his averments, and avail themselves of proceedings wholly inconsistent therewith.

We proceed to notice the bills of exceptions, taken by the defendants and appellants, during the progress of the trial.

The first was taken to the admission of a copy of a plat of survey, certified by the Register of the Land Office to be a correct transcript of the original survey in his office. It was objected to on the ground, that it ought to have been certified by the Surveyor General, and not by the Register of the Land Office; and, that it did not correspond with the description of the land given in the petition, and was not in conformity with the order of survey. The court, in our opinion, did not err. The copy was properly certified by the officer who had certified, and had, we presume, the custody of the original survey. The effect of the survey, and whether it proved a location according to the order of the Commissioners, were proper enquiries for the jury; and not to be decided by the court, in that stage of the proceedings.

The exception to the admission of the copy of the Commissioners' certificate in favor of Hendry, was, in our opinion, well taken, the copy being certified, not by the Register of the Land Office, but by the Surveyor General. The record, however, furnishes abundant evidence of the existence of such a certificate, independently of this informal copy. It is admitted in the present defendants' correspondence with the department, and in the evidence emanating from the land office at St. Helena. The admission, therefore, of the copy, did not influence the decision of the case.

The other questions of practice, appear to have been correctly decided; and the charge to the jury, which was objected to, appears to us not to have misled them upon the matters submitted for their decision.

It appears to us, on the merits, as it did to the jury, and the court below, that the plaintiff has shown the best legal title to the

land described in his petition; and that the location of it, conformably to the first order of survey, is conclusive between the parties.

*Judgment affirmed.*