PROVOSTY, J.
For the purpose of draining the territory lying between the city of New Orleans and Lake Pontehartrain, which was .a swamp, the Legislature in 1858 created a board of drainage commissioners and authorized it to levy a tax upon the lands composing said territory and to cause said lands to be seized and sold to satisfy said tax in case of nonpayment. In 1863, at tax sales made under this authority, all that tier of tracts of land from the lake to the city, fronting on Bayou St. John on the east and bounded in the rear, or west, by lands belonging ■ to the state, were adjudicated to said board, with the exception of two. The lands thus adjudicated were afterwards transferred to the city of New Orleans by the Legislature and in 1893 were sold at a receiver’s sale in the matter of James W. Peake v. City of New Orleans, No. 12,008 of the docket of the Circuit Court of the United States, Eastern District of Louisiana, to C. A. Gaudet; and the latter immediately sold them at private sale to the defendant. The other two tracts of said tier of lands were sold at state tax sales in 1899 to J. B. Maylie, who in Y904 sold them to the defendant company. The state lands bounding the said lands on the west were acquired from the state in 1874 by Andrew W. Smythe, and the eastern part, now in controversy, was sold by him to the plaintiff company in 1907. All of these lands had been laid out into streets and squares. The western boundary of the state *649 lands was Milne street. In the tax proceedings for the adjudication to the drainage board, and in the deeds by the receiver to Gaudet and by the latter to defendant, the description is both by boundaries and by the numbers of the squares; and in this description the said state lands are included, for the western boundary is given as Milne street, and the numbers of all the squares composing the state lands are given, so that on the face of the papers these several transfers included the said state or Smythe lands.
The two tracts sold at state tax sale to Maylie are described in the deeds to him by the same description as on the assessment roll as follows:
“A certain tract of ground in the square bounded by Polk avenue, French street, and Bayou St. John, and Milne, designated as squares Ños. 1015 and als.”
“A certain tract of ground in square bounded by Twiggs, Downs, Bayou St. John, and Milne streets, designated as square No. 1219 et als.”
We have transcribed the descriptions as they appear in the deeds; that is to say, each deed gives the number of but one of the squares and leaves the others to be represented by the general words “and als.”
The present suit was filed in December, 1909. It is a petitory action for the recovery of the eastern part of the said state or Smythe lands. Defendant sets up its titles, and, in connection with that acquired from Gaudet, pleads estoppel and the prescription of ten years acquirendi causa, and in connection with that acquired from Maylie pleads the same prescription and also that of three years by which nullities in tax sales are cured.
[1] Plaintiff admits that the title of Smythe was divested by the tax sale to Maylie, but only to that part of the land embraced within the squares, not to that part occupied by the streets. And this contention would seem to be well founded. True, the thing sold is described in the tax deed as “a tract of land,” but this tract of land is said to be bounded by streets and is said to be “designated” as squares Nos. etc.; and Maylie in his sale to the defendant company described each square by its number and by the four streets bounding it, and thus sold only the squares; and he declared that he was selling what he had acquired at the tax sale, thereby adopting the interpretation that the tax sale had conveyed to him only the squares.
It is not shown, or even suggested, that the state’s or Smythe’s or plaintiff’s title to the space occupied by these streets was ever divested, by dedication or otherwise. Plaintiff’s title from Smythe, and the latter’s from the state, are by lot, section, and township; or, in other words, according to the maps of the United States surveys. Plaintiff, then, is owner of the streets and defendant of the squares.
[2] This is certainly a peculiar situation. But it is brought about as the result of the application of clear principles of law, and there is nothing for this court but to recognize it. None but the owner can dedicate to the public, and the state, Smythe, or plaintiff have never dedicated these streets. We have considered whether the dedication might not have resulted from the warranty which the owner of property sold at a judicial or forced sale owes to the purchaser at the sale. Ordinarily such an owner warrants the title transferred at the sale and must reimburse the price to the purchaser if the latter is evicted; and an eviction from the streets is to all intents and purposes an eviction from the squares, for what the purchaser intended to buy and did buy was squares with streets, not squares without streets; squares accessible by streets, not squares so enclaved as not to be accessible at all. According to this, the warranty would extend to the maintenance of the purchaser in the *651 use and. enjoyment of the streets. But, on the other hand, this warranty is the creature of express law; and, since it exists independently of the consent of the owner, it is in derogation of common right and, as a consequence, must be strictly construed; it cannot be extended by implication. So restricted, it extends no further than to the legality of the title which the enforced vendor himself held. He warrants that his own title to the thing seized and sold was good; and, when that obligation is satisfied, he is wholly liberated and absolved; he owes absolutely nothing more. He stands sponsor for absolutely nothing else. He does not stand sponsor for the acts of his creditor in causing to be seized and sold only a part of the property instead of the whole. His is altogether a passive and negative attitude. He consents to nothing. The proceedings against him or his property are in invitum — against his will. It cannot be said that he stands by and impliedly consents to the sale or to what is being done. He simply yields obedience to the law which authorizes the creditor to cause the whole or a part of his property to be seized and sold to satisfy his debt. Whatever property is seized and sold he is divested of; whatever property is not seized and sold he continues to be the owner of. If the creditor chooses to seize and sell only the eastern part, or the western part or the middle part, or sundry parts here and there of the property (as for instance, the squares and not the streets), the sale will convey'title to the parts thus seized and sold, and to absolutely nothing else; and it can make no difference that these parts thus seized and sold are in the form of squares with spaces of 50 or more feet between them. And the purchaser at the enforced sale is conclusively presumed to know that the sale is being made against the will of the owner, who is consenting to nothing, and that he gets title to what has been seized and sold and to absolutely nothing else. In all that we have here said in regard to warranty we' have assumed that a tax debtor whose property is sold at tax sale owes warranty, but this we have done merely for argument, not meaning to express any opinion in that regard, but simply adopting, for the nonce, the views most favorable to defendant’s side.
[3] In the syllabus of defendant’s brief the grounds of the estoppel are stated as follows:
“The state of Louisiana having passed valid laws to incorporate drainage boards in the parishes of Orleans and Jefferson, and having given such boards power to levy a drainage tax to pay for the work of drainage, with the right to purchase the land, could not, after the . assessment has been made, the work done, the land bought in by the drainage board and held in trust to pay for drainage work, issue a valid patent to a stranger which would have the effect of divesting the drainage board of their title or their transferees.”
We fail to discover the slightest ground for the state’s being estopped. It is now fully settled that:
“No estoppel results against the state by reason of the fact that the tax assessor erroneously assessed the land to an individual and the tax collector sold it for nonpayment of taxes resulting from such assessment.” Slattery v. Leonard, 110 La. 86, 34 South. 139; Cordill v. Quaker Realty Co., 130 La. 933, 58 South. 819; In re Vieth, 130 La. 1108, 58 South. 899; Quaker Realty Co. v. Purcell, 131 La. 496, 59 South. 915; Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. 661.
[4, 5] In the next place, it is not true to say that the state authorized her own lands to be taxed, for she did not; on the contrary, she made an appropriation of $81,000 as her contribution towards the drainage' in question. The rule is that state property is impliedly excepted when authority is given to levy a tax. A. & E. E. of L. vol. 12, pp. 367-369; 37 Cyc. 872. Then, again, nothing shows that the drainage work in question was ever done. On the contrary, the contention of defendant is that these lands were still waist deep under water when it undertook to drain them. Finally these lands *653 were sold in suits against the owners of the front lands. Why the state, who was not a party to those suits and had no notice of them, should be bound by any proceedings had in them, it would not be easy to reconcile with sound legal principles.
[6] The prescription of ten years is well founded as to that -part of the land nearest the lake. Defendant has exercised upon it acts of possession dating ten years back of the filing of these suits; but it is not well founded as to the rest of the land, upon which defendant 'has exercised no acts of possession dating ten years back of the filing of these suits. Upon the former (that is to say, upon that part between Adams and Downs streets) defendant, as early as 1893 and 1894, established and operated a drainage pump, made surveys, and opened roads. We gather also, though not positively proved, that some squatters upon this land, who were cultivating small patches upon three of the 221 squares, attorned to defendant. But the effect of these acts of possession cannot be extended to the lands south of Downs street, for the reason that the defendant did not have a title translative of property, or, in fact, any title at all, to these lands south of Downs street, between Downs and Twiggs streets, until it acquired the Maylie title in 1904, only six years before the filing of this suit. And doubtless, that was the reason why defendant did not extend its roads beyond Downs street when, in 1893 and 1894, it undertook to improve its said lands. The Maylie tract, which then belonged to the Milne Asylum, intervened between defendant’s said land upon which defendant exercised these acts of possession and the other lands; and, such being .the case, defendant cannot invoke the doctrine that possession of part with title to the whole is possession of the whole. On that point this court said in Gulf Refining Co. v. Jeems Bayou Hunting & Fishing Club, 129 La. 1026, 57 South. 322:
“Where one acquires, though at the same time and from- the same person, distinct and widely separate tracts of land and takes actual possession of one or more of them, the rule that possession under title of part of an estate is possession of the whole has no application to the tracts not actually taken possession of.”
The proposition is a plain one and really needs no reinforcement by authority. “That the tracts must be contiguous,” says the Supreme Court of Arkansas, in Brown v. Bosquin, 57 Ark. 97, 20 S. W. 813, “is without exception in authority.”
[7] The acts of possession which defendant has shown upon these other lands are probably of a sufficiently pronounced character to serve as a basis for the prescription of ten years, but they do not date further back than 1903. The only one of them which it is pretended goes back ten years before the filing of this suit is the pumping. This pump was established in a canal dug by the Orleans levee board along Adams street, which was the lake side boundary of defendant’s land. It was operated for two years, until the city drainage pump at the Orleans canal was established. The man who operated it says that the land was made dry enough for a person to walk across it. • Whether he meant by this that all the land was thus drained or only that part belonging at that time to defendant (in other words, that part north of Downs street) does not appear. It does not appear that any canals were ever dug across the Milne Asylum or Maylie tract of land, which intervened between defendant’s land nearest the lake and the other lands, but we gather that the entire area from the city to the lake was a continuous swamp; and- the inference wonld therefore be that defendant’s pump did more or less affect the water level upon this Milne Asylum or Maylie tract and upon the other lands south of it which it separated from defendant’s land. But, assuming this to have been the case, this lowering of the water level upon a tract of land, or even the draining of it dry, as the result of draining another *655 tract of land separated from It by an intervening tract of land, or as the result of draining a swamp of which it forms a part, cannot constitute the “public and unequivocal” possession required by the Code for the prescription of ten years acquirendi causa. If two tracts of land are so situated that one of them cannot be drained without at the same time draining the other, the draining of one of them is no indication of an intention to possess the other as owner or of a hostile possession of the other. Indeed, unless the tract upon which the drainage works are established is higher and does not owe a servitude of drain to the rest of the swamp, its owner is not at liberty to dam off the waters, and hence in draining them he exercises the function of a servant to the lands to which the servitude is due and not those of a master over them. The case would be different if it were shown that canals had been dug upon the land as part of a scheme of drainage.
Moreover, this pump was operated for only two years, so that, even if its action could be deemed to have been an act of ownership over the lands, its duration would not have continued during the requisite ten years.
Plaintiff contends that the tract nearest to the lake (that is to say, that part north of Downs street and of the Milne Asylum or Maylie tract) was acquired by defendant not as a continuous tract of land but as 221 squares numbered respectively from 1,297 to 1,518; and that therefore, upon the principle that the effect of acts of possession upon one tract cannot be extended to another tract separated from it by an intervening tract, for the purposes of prescription, the acts of possession shown by defendant can support the plea of prescription only as to those particular squares upon which they were exercised.
In the first place, it is not so certain that defendant did not buy from Gaudet a continuous tract of land. True, in the sale to Gaudet by the receiver and in the sale by Gaudet to defendant, the description is by regularly numbered squares and by reference to streets; but it is also by the boundary lines of the. tract as a whole. Thus:
“(5) A tract of land beginning- at the north line corner of the Bayou'St. John of the lands belonging to the Female Orphan Society and having 12 arpents, more or less, on said Bayou St. John, thence along said May street to Milne street, measuring 45 arpents, 80 feet, more or less, thence south along Milne street, 9 arpents, 142 feet, more or less, thence on a line to the said Bayou St. John, measuring 45 arpents and 96 feet, more or less, bounded on the north by the lands of the late J. B. Genois, on the west by Milne street, on the south by lands of thé Female Society, and on the east by the St. John Bayou, as per plan of J. A. D’Hemecourt, surveyor, dated - 30, 1860, deposited in said office of said commissioner of First Drainage District.”
[8] In the next place, even if the description had been by streets and squares only and even if that part occupied by these streets had been segregated from the squares by dedication (a fact not shown), it would not follow that the acts of possession had not been sufficient. The streets existed only on paper; the locus was a wild swamp; the defendant established a drainage pump for draining the entire tract and opened roads through the entire tract along the lines marked on the map for the streets. These were acts of ownership of the entire tract and were public and unequivocal.
We deem it prudent not to undertake to frame the decree in this case but to remand the case for this work to be done by the trial court, with the assistance of the counsel in the case, in accordance with the views herein expressed.
We have said that defendant’s tract nearest the lake extends as far south as Downs street. This we did merely for convenience in statement. As a matter of fact, it stops somewhat short of doing so. The dimensions are stated with precision in the deed by Gaudet to defendant; and defendant’s title by prescription, so far as that tract is con *657 cerned, extends that far and no farther. As to all this tract nearest the lake, the plea of prescription of ten years is sustained. As to all the rest of the property in dispute, it is overruled. The tax title to Maylie and by Maylie to defendant is held to be valid, but only as to the squares embraced in it, not as to the streets. Except in so far as the plea of prescription of ten years is sustained, and in so far as the tax title is thus declared to be valid, the title of plaintiff is recognized and ordered enforced to the property in dispute.
For convenience in restatement, the judgment appealed from is set aside.
It is therefore ordered, • adjudged, and decreed that the judgment appealed from be set aside, and that this case be remanded to the lower court for the decree therein to be framed in accordance with the views herein expressed. All costs to be paid by defendant.