(76 South. 599)

No. 20818.

### LEADER REALTY CO. v. LAKEVIEW LAND CO.

### SAME v. NEW ORLEANS LAND CO.

(June 30, 1917. Rehearing Denied Oct. 29, 1917.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ⬸744—ASSIGNMENTS OF ERROR—TIME FOR FILING.

An assignment of errors, filed in the appellate court more than 10 days after the record is brought up, comes too late.

2. PUBLIC LANDS ⬸106(1) — DECISIONS OF LAND DEPARTMENT—CONCLUSIVENESS.

The making, correcting, and approving of surveys of the public lands is under authority of the General Land Office of the United States, and the decisions of that department of the government are not subject to correction by the courts in suits between individuals.

3. PUBLIC LANDS ⬸61(8) — LOUISIANA — TRANSFER OF TITLE—STATUTE.

Act No. 166 of 1858, providing for leveeing, draining, and reclaiming certain portions of the swamp lands in the parishes of Orleans and Jefferson, did not purport to transfer any land of the state to the leveeing and draining district created by the act; nor did the statute authorize the board of commissioners to tax the lands belonging to the state within the district.

4. PUBLIC LANDS ⬸61(8) — LOUISIANA — TRANSFER OF TITLE—STATUTE.

Act No. 30 of 1871, providing for the drainage of New Orleans, did not purport to transfer any land of the state to the board of administrators of New Orleans.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Petitory action by the Leader Realty Company against the Lakeview Land Company and the New Orleans Land Company. Judgment for plaintiff, alternative demand for reimbursement dismissed as of nonsuit, and defendants appeal, and plaintiff, answering the appeal, prays that the judgment be amended to reject demand for reimbursement absolutely. Affirmed.

See, also, 133 La. 646, 63 South. 253.

Charles Louque and Dinkelspiel, Hart & Davey, all of New Orleans, for appellants. Johnston Armstrong, Farrar, Jonas, Goldsborough & Goldberg, and Gustave Lemle, all of New Orleans, for appellee.

O'NIELL, J. This is a petitory action in which the plaintiff claimed title to lots 1, 6, and 7 of section 8, and lots, 1, 6, 7, and 12 of section 17, in township 12 S., range 11 E., in the southeastern district of Louisiana, east of the Mississippi river. The seven lots form a compact tract or continuous strip of land extending from Lake Pontchartrain due south, in the order in which the numbers of the lots are given, and comprise the fractional east half of east half of the two sections. The land is bounded on the east in part by the rear boundary lines of two grants made to Alexander Milne, designated as O. B. 17 and O. B. 164 (which grants ex-

tend in a westerly direction 40 arpents back from Bayou St. John); and the land sued for is bounded on the east also in part by the sixteenth section lying immediately south of the Milne grant, O. B. 164.

Without otherwise putting their titles at issue, the defendants first filed a plea of prescription of 10 years as to all of the land claimed by the plaintiff, and a plea of prescription of 3 years as to certain tracts which one of the defendants had bought on the 15th of July, 1904, from Bernard Maylie, who had acquired it by virtue of a tax sale dated the 9th of August, 1899. The tax deed on which the plea of prescription of 3 years is founded contains two separate descriptions. One purports to describe a tract of land bounded on the north by Downs street and south by Twiggs street, extending east and west across lot 1 of section 17, but also says "designated as square No. 1219 et al." The other description is of a tract bounded on the north by French street (running east and west across the southern part of lot 7 of section 17), and on the south by Polk avenue (running east and west across the northern part of lot 12), but it also says "designated as squares Nos. 1015 and al." This twofold method of description in the tax deed, describing the land first as only two separate tracts, bounded by the streets named, and then saying, "designated as squares Nos.," etc., gave rise to the question whether the tax deed conveyed only the squares themselves or also the streets separating the squares, because the land embraced in that sued for, lying between Downs street and Twiggs street, includes five separate whole squares and parts of six other separate squares, and the streets separating the eleven squares; and the land sued for, lying between French street and Polk avenue, embraces six whole squares and parts of four other squares, and the streets separating the ten squares.

The pleas of prescription were tried by a jury, and a verdict was rendered in favor of the defendants, maintaining both pleas. Judgment was rendered accordingly, rejecting the plaintiff's demand. On appeal, the judgment was amended as follows: The prescription of 10 years was overruled as to the land south of a certain line running parallel with, and 6 feet, 9 inches, and 2 lines north from Downs street. The plea of prescription was maintained and the plaintiff's claim rejected as to all of the land lying above that line, thus eliminating from the contest lots 1 and 6 of section 8, and all of lot 7 in that section, except a narrow triangular part in the southwest corner, extending below the line and into Downs street. The prescription of 3 years was maintained as to the land described in the tax deed to Bernard Maylie and in the deed from him to the defendant; but it was held that the tax title embraced only the squares themselves, and not the streets separating the squares, lying between the east and west boundaries of the land in contest and between Downs street and Twiggs street and between French street and Polk avenue. The prescription of 3 years, therefore, in so far as it was maintained, has eliminated from the contest eleven tracts of land in lot 1 of section 8, being all of the five squares numbered, respectively, 1238, 1239, 1248, 1249, and 1289, the eastern portion of the three squares numbered, respectively, 1290, 1247, and 1240, and the western portion of the three squares numbered, respectively, 1237, 1250, and 1288; and it has eliminated also ten separate tracts lying partly in the southern portion of lot 7 and partly in the northern portion of lot 12 of section 17, being all of the six squares numbered, respectively, 1033, 1034, 1035, 1046, 1047, and 1048, the eastern part of the two squares numbered, respectively, 1045 and 1036, and the western part of the two squares numbered, respectively, 1032 and 1049. In

the original decree of this court, the case was remanded to the district court for judgment to be framed so as to recognize the plaintiff's title to all of the land sued for, except the tracts on which the pleas of prescription were maintained. But, on application for rehearing, the decree was set aside in so far as the court had passed upon the question of title of the lands on which the pleas of prescription were overruled; and the case was then remanded for trial of the question of title to the lands that were not eliminated from the contest by prescription. See Leader Realty Co. v. Lakeview Land Co. et al., 133 La. 646, 63 South. 253.

When the mandate was filed and the case reinstated on the docket of the district court, judgment was entered on the pleas of prescription, in accord with the decree of this court.

The defendants then answered, tracing their title back to Alexander Milne and Don Carlos Tarascon, and claiming that all of the land remaining in contest was embraced in certain grants made to them by the French or Spanish government and approved by the United States government. They alleged that the land was an uninhabitable swamp when they bought it; that they had spent $380,000 in draining and improving the property, digging canals and building shell roads, and had paid taxes on it every year since the date of their purchase—that is, since the 16th of February, 1893. They prayed that the plaintiff's demand be rejected, and in the alternative that, as possessors in good faith, they should be reimbursed for the improvements made and for taxes paid on the property, if the plaintiff should have judgment for any part of the land.

Judgment was rendered in favor of the plaintiff for all of the land remaining in contest; that is, for all of the land sued for, except that to which the defendants' title had been confirmed by the pleas of prescription of 10 and 3 years, already maintained. The defendants' alternative demand for reimbursement was dismissed as of nonsuit, without prejudice to their right to a separate action thereon. The defendants prosecute this appeal; and the plaintiff, answering the appeal, prays that the judgment be amended so as to reject the defendants' demand for reimbursement absolutely. The defendants have also filed in this court a plea of prescription of 30 years. One of the defendants, New Orleans Land Company, also filed an assignment of errors, alleging that its title was acquired from and by the exercise of the jurisdiction vested by the laws of the United States in the Circuit Court of the United States for the Eastern District of Louisiana, in a suit entitled Peake v. City of New Orleans, and that the title so acquired could not be disregarded; and that a certain judgment rendered by the Circuit Court of the United States, in a suit entitled Smythe v. New Orleans Land Company, was evidence juris et de jure that the defendant was in possession of a part of the property claimed in this suit; and that, under the doctrine that possession of a part of a tract of land is possession of the whole, the pleas of prescription of 10 and 3 years should be maintained as to the whole tract. Thereupon the plaintiff, appellee, filed a motion to have the appellants' assignment of errors rejected and stricken from the record, on the ground that it was not filed within the time allowed by law, as prescribed by article 897 of the Code of Practice. The latter motion was ordered deferred to be considered with the merits.

## Opinion.

[1] The appellants' assignment of errors was filed more than a year after the record in the present appeal was brought up. Article 897 of the Code of Practice provides that an appellant who does not rely wholly or in part, for maintaining his appeal, upon a

statement of facts, or an exception to a ruling of the trial judge, or a special verdict, but relies upon an error of law appearing on the face of the record, shall be allowed to allege such error, if he files, within 10 days after the record is brought up, a written statement alleging specifically the errors of which he complains; otherwise his appeal shall be dismissed. The appeal in this case, of course, cannot be dismissed on the ground that the appellants failed to file the assignment of errors within 10 days after filing the transcript, because the appellants do not depend upon the assignment of errors to maintain their appeal. But if the errors thus complained of were not already brought up for decision by the appeal, they could not be considered as presented in time by the assignment of errors. The assignment of errors, in this case, however, merely advances an argument in support of the pleas of prescription of 10 and 3 years. The question, to what extent those pleas should have been maintained and to what extent they should have been overruled, was considered and finally decided in the former appeal in this case and is res judicata. The assignment of errors must therefore be disregarded.

[2-4] The plaintiff bought the land in contest, being a part of lot 7 of section 8, and of lots 1, 7, and 12, and all of lot 6, of section 17, from Dr. Andrew W. Smythe, on the 1st of May, 1907. Dr. Smythe acquired it from the state of Louisiana under patent dated the 3d of June, 1874. The land was granted to the state by virtue of the swamp land grant of March 2, 1849 (9 U. S. Statutes at Large, p. 352), and was selected, surveyed, and approved to the state as swamp or overflowed land to which the state was entitled, as per list of approvals dated May 5, 1874.

The defendants bought from Dr. Charles A. Gaudet, on the 16th of February, 1893, a tract of land described as fronting on Bayou St. John and extending back in a westerly direction to Milne street, and therefore embracing the land in controversy. Dr. Gaudet acquired the same tract, bounded on the east by Bayou St. John and on the west by Milne street, at a receiver's sale made under a decree of the United States Circuit Court for the Fifth Circuit and Eastern District of Louisiana, on the 27th of February, 1892, in the suit of James W. Peake v. City of New Orleans.

The land had been transferred by the city of New Orleans to the receiver under orders of the federal court in the receivership proceeding of Peake v. City of New Orleans, on the 11th of February, 1892. It had been transferred by or from the three boards of drainage commissioners for the drainage districts of Orleans and Jefferson (established by Act No. 165 of 1858, p. 114, and Act No. 191 of 1859, p. 152), and was held in trust by the board of administrators of New Orleans by Act No. 30 of 1871, entitled an act to provide for the drainage of New Orleans. It was acquired by the board of commissioners of the First drainage district on the 21st of July, 1863, by virtue of public sales made by the sheriff in execution of judgments for taxes due to the drainage district, assessed, respectively, against the heirs of Charles D. Moran and the Milne Orphan Asylums. The four Milne Asylums afterwards approved and ratified the sale of their property.

Thus far, the defendants, tracing their chain of title backward in time, have shown a title upon its face translative of the property in contest. But the plaintiff has shown an unbroken chain of title from the government of the United States. And in order to defeat that title (eliminating questions of prescription), it devolved upon the defendants to show a title antedating that of the plaintiff, from one of the plaintiff's authors or vendors, or from the French or Spanish government. The defendants do not claim title from the plaintiff's immediate vendor, Dr. Smythe,

who acquired title from the state in 1874. They claim title from the state by virtue of Acts No. 165 of 1858, and No. 30 of 1871, and by virtue of a plea of estoppel which will be referred to hereafter. They claim, primarily, that the title did not pass to the state under the swamp land grant of 1849, but was embraced within prior grants by the French or Spanish government, approved by the United States.

The Moran title acquired by the board of commissioners of the First drainage district embraces a tract lying immediately south of the Milne concession, B. 164, and extending from Bayou St. John west to Milne street, thus embracing the southern portion of the land in contest. It embraces also what has been surveyed by the United States government as a fractional sixteenth section in place, adjoining on the east the southern portion of the land in contest. The defendants thus trace title to that part of the land in contest back to one 'Don Carlos Tarascon. The only evidence of a grant or concession to Tarascon is the declaration made in a deed by him to one Andre Jung, of date the 3d of July, 1773, that the land was held by him (Tarascon) "by concession made to him by Monsr. Aubrey, French Governor, at the time of his domination, before Stanr. Foucoult, Commissary, as appears in the titles that he delivered to the purchaser." There is therefore no more evidence of a concession to Tarascon in this case than there was in the case of Board of School Directors v. New Orleans Land Co., 138 La. 32, 70 South. 27. The reasons for holding that the New Orleans Land Company failed to prove that a valid or complete concession—or a concession at all —from the French or Spanish government was made to Tarascon are fully set forth in the opinion rendered in that case. Although the decision then rendered did not (because of the plaintiff's lack of authority to prosecute the suit) become final, the reasons for holding that there was no proof of a concession from France or Spain to Tarascon are entirely applicable to the present case, and it would serve no useful purpose to repeat them. It is sufficient to say that, in this case as in that, the defendants failed to prove that there was any prior grant or concession conflicting with the right of the United States government to grant the land, as it did, to the state of Louisiana.

The title acquired from the Milne Asylums, which the defendants contend embraces the remaining part of the land in contest, goes back to the grant to Alexander Milne, designated as O. B. 164. See Am. St. Papers, vol. 17; P. L. vol. II, p. 315. As to that title, it is sufficient to say that the Milne claim, according to the approved United States survey, calls for a tract fronting on Bayou St. John and having a depth of 40 arpents. Therefore, as located on the approved government survey, the rear or western boundary line of the Alexander Milne claim O. B. 164 is the eastern boundary line of that part of the land in contest designated as lots 1 and 6 and the northern part of lot 7 of section 17, township 12 S., range 11 E.

The learned counsel for the defendants contend that the official survey is incorrect, that the Milne claim extends back from the west bank of Bayou St. John 45 arpents to Milne street, and therefore embraces that part of the land in contest that appears on the photolithographic map as the southern part of lot 7 of section 8 and lots 1 and 6 and the northern part of lot 7 of section 17. We are unable to find it so. There is no evidence in the record that the Surveyor General or deputy United States surveyor was wrong in his location of the line in question; and if we thought there was an error in that respect, it would not be for us to undertake to correct it. As was said in Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 565, the power to make or correct

surveys of the public lands belongs to the political department of the government, and while the lands are subject to the supervision of the General Land Office, its decisions in such cases are unassailable by the courts, except by a direct proceeding. See, also, Boatner v. Scott, 1 Rob. 546. Our conclusion is that the defendants' title, emanating from the claim of Alexander Milne, does not embrace the land in contest.

The defendants contend further that the state's acquisition of lot 7 of section 8 and lots 1, 6, 7, and 12 of section 17, in township 12 S., range 11 E., under the Swamp Land Act of March 2, 1849, inured to the boards of drainage commissioners of the drainage districts of Orleans and Jefferson under and by virtue of Act No. 165 of 1858, and inured to the board of administrators of New Orleans under Act No. 30 of 1871. Act No. 165 of 1858 did not purport to transfer any land of the state to the leveeing and drainage district created by that statute, nor did it authorize the board of commissioners of the district to levy taxes upon any public land. Nor did Act No. 30 of 1871 purport to transfer any land of the state to the board of administrators of New Orleans. When the land was assessed for taxes, and seized and sold to the board of commissioners of the drainage district, it was a part of the public land of the United States, subject to approval to the state as swamp or overflowed land; and it was therefore not subject to taxation. That question was also fully considered in the case of Board of Directors of Public Schools ·v. New Orleans Land Co., supra; and it would be useless to repeat here the reasons assigned for the opinion in that case that the state was not estopped, by any act of the Legislature, to claim and dispose of the land after it was approved to the state as swamp or overflowed land.

There is no merit in the plea of prescription of 30 years, filed in this court. In the appeal from the verdict and judgment rendered on the plea of prescription of 10 years, it was found that the defendants had not had possession, for a period of 10 years before the institution of this suit, of any of the land that was left in contest by the decree then rendered. There is no more evidence before us now than there was then of the defendants' possession of the land prior to the institution of this suit. The plea of prescription of 30 years is therefore overruled.

Referring now to the appellee's answer to the appeal, all that can be said against the defendants' demand for compensation for improvements made and taxes paid on the land is that the evidence was not sufficient to maintain the claim or base a judgment upon it. The evidence does not show affirmatively that the defendants are not entitled to compensation. Under the circumstances, the judgment of nonsuit on the defendants' claim for compensation is correct.

·The judgment appealed from is affirmed, at the cost of the appellants.

LECHE, J., takes no part.