OVERTON, J.
The New Orleans Land Company entered into contracts to sell to J. E. Morel and Dr. Benjamin Chamberlin certain lots in the city of New Orleans. William Brewer, James G. Sullivan, and Thomas I-I. Ryan, the plaintiffs herein, desired to purchase these lots, and the New Orleans Land Company, the defendant herein, through one of its agents, procured assignments of the contracts mentioned from Morel and Chamberlin, in favor of plaintiffs. Plaintiffs then made a cash payment to defendant, gave it certain notes, and continued paying for the property, under the contracts assigned to them. After making the last deferred payment the total amount claimed to have been paid by each of the plaintiffs to defendant was $659.15. This, however, included interest on the deferred payments and taxes on the property up to that time, which under the contracts plaintiffs were obligated to pay. In 1914, after the last payments were made, defendant executed a deed to each of the plaintiffs, conveying to each the lots he had agreed to purchase. The consideration recited in each deed is $500, though plaintiffs contend that the consideration, in reality, agreed upon and paid by each of them, was $606.67.
At the time of the' execution of the deeds, and, in fact, before plaintiffs agreed to purchase, a suit was pending against defend *449 ant, instituted by the Leader Realty Company, in which' the latter claimed a large tract of land, which included the lots in question. This suit finally resulted in a judgment recognizing the title asserted by the Leader Realty Company. See Leader Realty Co. v. Lakeview Land Co., 142 La. 169, 76 South. 599; Leader Realty Co. v. New, Orleans Land Company, 142 La. 169, 76 South. 599.
Several years after the execution of the deeds to them, plaintiffs discovered that the Leader Realty Company had been decreed to be the owner of the lots in question, and therefore that defendant was without title when' it sold to them. After failing in an effort to effect an amicable settlement with defendant, they instituted this suit, in which each sues to recover $659.15, the amount above mentioned, as paid under the contract to purchase, and for $21.60 additional, the latter amount consisting of taxes paid on the property after the execution of the deeds, and of fees for their execution, making a total amount sued for by each plaintiff of $680.75. The cause of action, tersely stated, is based on the allegation that defendant was not the owner of the property conveyed when it executed the deeds, and was at no time the owner of it; that the Leader Realty Company was then its owner, and had been for many years. The defense set forth in the answer is, substantially, that defendant was the owner at the time the deeds were executed, and that it gave each of the plaintiffs a valid title.
The case was tried and judgment rendered in the civil district court in favor of plaintiffs for the full amount for which the suit was instituted. An appeal was then taken to the Court of Appeal for the Parish of Orleans. The appellate court, on the first hearing, allowed to each plaintiff the $500 recited as the consideration in each of the three deeds, and also the item of $21.60, con- ' sisting of the taxes paid by each after the execution of the deeds, and of the notarial fee paid by each for the execution of his deed, but disallowed the items consisting of interest and taxes paid before the execution of those instruments, and disallowed also that portion of the purchase price in excess of that stated in the deeds, and accordingly amended the judgment appealed from by reducing it, as to each plaintiff, from $680.-75 to $521.60. Both plaintiffs and defendant asked for a rehearing in the case. Defendant, in its application, alleged that it had entered into an agreement to buy, and had bought, all of the right, title, and interest of the Leader Realty Company in and to the judgment rendered in favor of that company and against it, which judgment, we may add, recognizes the title of the Leader Realty Company to the property in question. The court granted a rehearing. On the sec-, ond hearing the court reached the conclusion that, if defendant produced and filed the act by which it acquired the judgment mentioned, the result would be the defeat of this suit, although the purchase was made after the institution of the suit. The court accordingly rendered judgment remanding the case to enable defendant to offer in evidence the act by which it acquired title to the land in question, and ordered that defendant pay the costs of court, up to the time the case was remanded.
 There can be no question that when one sells property, which he does not own, and thereafter purchases it from the true owner, the title acquired by him inures to the benefit of his vendee. City of New Orleans v. Riddell, 113 La. 1051, 37 South. 966; Stokes v. Shackleford, 12 La. 170. The question, however, is: Does the acquisition inure to the benefit of the purchaser’s vendee against that vendee’s win, after the latter has instituted suit to recover the purchase price, and before final judgment? The Court *452 of Appeal recognizes the question to lie as stated, and cites commentators on the French Code supporting the view that if the purchase is made at any time before final Judgment rescinding the sale this is sufficient to defeat the suit. While there are French commentators who so hold, yet, on the other hand there are those who do not. The exact question was before this court in a case decided some years ago. In the case to which we refer it appeared that the city of New Orleans sold to Thomas Hale certain lots. At the time of the sale there was a suit pending against municipality No. 2, to the rights of which the city of New Orleans had succeeded. The suit was instituted by A. and F. Remy, and its purpose was to recover a part of the property purchased by Hale. The Rernys were successful in their suit against the city. Hale then brought suit to rescind the sale made to him and to recover the purchase price, basing his cause of action on the ground that the city had sold him property a part of which belonged to another, from which part he had been evicted. After the institution of the suit the city acquired the Remy title, and then urged that, as its purchase inured to Hale’s benefit, the defect in the sale to Hale was cured. The court, after a thorough consideration of the question, reached the conclusion that the purchase did not have the effect of curing the defect, and of thereby defeating the suit to rescind; and in the course of its opinion said:
“The contract of sale is a bilateral contract, it requires two wills. The consent of Hale to the sale by the Remys would have been presumed in, law, had he remained in possession up to the time of that sale without complaining. But it is impossible to presume such a consent in the face of'the action of nullity instituted by him against the city.” Hale v. City of New Orleans, 18 La. Ann. 321.
In our view the case announces the correct doctrine and is decisive of the question under consideration.
Having determined that the Court of Appeal erred in remanding the case, since the proffered evidence of the purchase by defendant could not have the effect of validating the sale, if it should be null on the ground urged, it is next necessary to consider the right of plaintiffs to recover on the record as made up and presented to us.
The lots purchased by plaintiffs are located in a part of section 17, township 12 S., range 11 E., in the Southeastern district of'Louisiana, east of the Mississippi river. That portion of the section in which they are located forms part of what is known as the Tarascón grant. In the consolidated cases of Leader Realty Co. v. Lakeview Land Co., and Leader Realty Co. v.’New Orleans Land Co., the New Orleans Land Company, which is also the defendant herein, relied on the Tarascón grant as a necessary link in its title. The New Orleans Land Company failed in that case to make the required proof of the validity of the grant. As a consequence, it lost its suit, and 'the Leader Realty Company was decreed to be the owner of the land. These consolidated cases are reported in 142 La. on page 169, 76 South. 599. Later the state of Louisiana instituted suit against the New Orleans Land Company to recover fractional section 16 of the above township and range. This suit involved a part of the Tarascón grant. The New Orleans Land Company in that suit established the validity of that grant, and consequently the grant was recognized in that suit as valid. State v. New Orleans Land Co., 143 La. 858, 79 South. 515. In Brott v. New Orleans Land Co., 151 La. 134, 91 South. 653, which involved the title to land located in section 15 of the above township and range, the validity of the Tarascón grant again arose and was recognized.
Learned counsel for the defendant herein rely on the recognition of the validity of the Tarascón grant in the last two cases cited,- and argue that, as we have recognized *453 its validity in those cases, we should recognize its validity in this ease, and should therefore hold that defendant conveyed a valid title to plaintiff when it sold theih the lots. However, we do not view the question as one involving an inquiry anew into the validity of the Tarascón grant. When defendant sold to plaintiffs there was pending against it the Leader Realty Company Case, and there was of record in the office of the recorder of mortgages a notice of lis pendens in that case. Hence, whether right or wrong, the decree in the Leader Realty Co. Case is binding on plaintiffs ¿nd defendant herein, in so far as concerns the lots in question. Kohn v. Byrne, 10 Rob. 114; Hale v. City of New Orleans, 18 La. Ann. 321.
Therefore, when defendant sold to plaintiffs, it sold the property of another. The Civil Code provides that the sale of the property of another is null, and also that it may give rise to damages if the purchaser was ignorant of the fact that the property belonged to another. C. C. art. 2452. In such case it is not necessary that the purchaser be actually evicted before suing for the purchase price paid. Bonvillain v. Bodenheimer, 117 La. 794, 42 South. 273.
Hence, as plaintiffs are entitled to a judgment, the next question to be determined is the amount of that judgment. As already stated, each deed declares the consideration to be $500.00, and receipt of that sum is acknowledged in each. Plaintiffs allege that the consideration recited in the deeds is not the true consideration, but that in each sale the price agreed upon and paid was $606.67. The contracts to purchase show that the consideration to be paid by each of the plaintiffs was $500. However, there is evidence in the record tending to show that the amount actually paid by each plaintiff for the property was $606.67. This evidence is in part oral. It also consists of a memorandum showing certain terms and conditions, supposedly of the sales herein. This memorandum is not only so incomplete as not to connect itself with certainty with the contracts and sales in question, but is unsigned. Being unsigned and otherwise incomplete, it does not evidence a written agreement to pay a greater consideration than that stated in the contracts and sales. Defendant objected to all of this evidence. We think that the objection should have been sustained. The manifest purpose of the evidence was to show a greater consideration than that stated in each deed, in order to recover the excess, which, it is apparent, would increase the obligations of defendant under the deeds. This cannot be done, at least in the absence of a clear and specific allegation, which the petition herein does not contain, showing error in the confection of the instrument, or else fraud. Civil Code, art. 2276. Formento v. Robert, 27 La. Ann. 489; Chaffe v. Ludeling, 34 La. Ann. 963; Harrison v. Laverty, 8 Mart. (O. S.) 218, 13 Am. Dec. 283; Goodloe v. Hart, 2 La. 446; 22 C. J. § 1476, p. 1118.
Article 1900 of the Civil Code, cited by plaintiffs, is not applicable to the question under consideration. That article reads:
“If the cause expressed in the consideration should be one that does not exist, yet the contract cannot be invalidated, if the party can show the existence of a true and sufficient consideration.”
That article is an exception to the general rule that parol evidence is not admissible to vary or contradict the recitals of a written act of sale. Dickson v. Ford, 38 La. Ann. 736; Landry v. Landry, 40 La. Ann. 229, 3 South. 728. The purpose of the article is to enable a vendee to maintain the validity of a sale, when attacked on account of the consideration, by showing the true consideration. In the case at bar, the validity of the sale is not attacked because of the consideration expressed in it, and therefore the article is not applicable. Nor is the *456 case of Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 South. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248, which is also cited by plaintiffs, pertinent. In that case -the court admitted parol evidence, not to show that the amount of the consideration was different from that stated in the deed, but to prove the, amount that the Queensborough Land Company actually received from Cazeaux, and should therefore refund to him. That amount, it was contended, was less than the consideration stated in the act of sale ■ and acknowledged therein to have been paid. The court viewed the acknowledgment or receipt, in the deed, from the same standpoint that it would view any other receipt given for money paid, and on that theory ruled that the evidence was admissible, holding that one may go behind and overthrow a receipt with parol evidence. The court did not, however, hold that a different consideration in amount could be proved in such a suit by parol from that expressed or agreed to in the act of sale, which additional fact it is necessary to prove in the case at bar, and to prove which evidence amounting to nothing more than parol has been offered. ' .
In view of the fact, therefore, that the only evidence offered to show the additional consideration *was not admissible, we are of the opinion that plaintiffs cannot recover the excess consideration claimed, and hence that this item must he reduced, as to each plaintiff, from $606.67 to $500, the consideration stated in each deed.
 With respect to the interest on the deferred payments, and the taxes on the property, paid before the execution of the deeds, under the contracts to purchase, we think that these items stand on a different basis from that of the excess of the purchase price claimed. Plaintiffs have written evidence of their obligations to pay these items, as appears from the contracts to purchase. Naturally, the fact of their payment, which has been satisfactorily proved, was not mentioned in the acts of sale. These contracts bear such a relation to those acts that they should be considered in connection with them. Under the circumstances we think their payment as part of the agreements may be shown by parol, and hence that these items should be allowed. With respect to the item for taxes paid after the execution of the sale, the payment of the taxes has been satisfactorily established, and that item, unquestionably, should be allowed. These items, including the purchase price of $500, in each sale, paid by the respective plaintiffs, and also the $3 notarial fee, stipulated to be paid in the contracts to purchase, which also should be allowed, amount to the sum of $574.08, for which each of the plaintiffs is entitled to judgment. This reduces the judgment of the district court $106.67 as to each plaintiff. i
We may add in conclusion that we have not overlooked the plea to the jurisdiction of the state courts to render the judgments they did in the Leader Realty Cd. Case, cited supra, which plea is contained in an amended answer. The plea does not seem to be pressed, and moreover is without merit. The remaining defense, set up in the amended answer, which is an attack on the right of the state of Louisiana to transfer fo Dr. Smyth the land in question, is precluded by the judgment rendered in the Leader Realty Oo. Case, cited supra, and is therefore not considered further.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal be annulled, avoided, and set aside; that said sale be rescinded and canceled, that the judgment of the district court in. favor of each one of the plaintiffs be amended by reducing it, as to each plaintiff, in the sum of $106.67, and as thus amended that it be reinstated, and made the *457 judgment of this court; defendant to pay all costs.
ROGERS, J., recused.
O’NIELL, C. J., dissents from the ruling that testimony was not admissible to prove a consideration different from that stated in the deed.