ELLIS, Judge.
Mack B. Johnson, plaintiff herein, is a real estate broker in East Baton Rouge Parish. In his petition, he alleges that he loaned $600.00 to the defendants, Joseph M. Campagna and Burnell Hamilton, the repayment of which was demanded by him, but which defendants refused to pay. Defendant Campagna filed a general denial to the suit. Burnell Hamilton made no appearance and filed no answer, and issue was joined as to him by entry of a preliminary default.
After trial on the merits, judgment was rendered rejecting plaintiff’s demands as to Campagna and giving him judgment for the $600.00 against Hamilton. From this judgment plaintiff prosecutes this devolu-tive appeal.
The record reveals that on June 25, 1964, plaintiff sold a lot of ground to Campagna for a recited cash consideration of $1,150.-00. On the same day, Campagna executed a mortgage on the same lot, securing a $5,000.00 demand note. On June 27, 1964, Campagna and Hamilton signed a listing contract with plaintiff, giving him the exclusive right to sell the property for a period of one year for a price of $7,800.00, with an agreed commission of 8%.
All of plaintiff’s testimony as to the circumstances surrounding the loan was objected to by defendant as being in violation of the parol evidence rule. He testified that shortly before the sale was passed, he was advised that the defendants were $600.00 short of the amount of money needed to complete the project. He agreed that he would wait until the house was sold and the mortgage paid off to receive that amount of money. In consideration thereof, the defendants agreed to list the property with him for sale at a commission in excess of that usually paid. Plaintiff claims that he viewed the transaction as nothing more than a loan, while defendants contend that, since the deed to them recites all consideration to have been received in cash, he cannot now prove otherwise by parol evidence.
It further appears uncontradicted that Campagna paid off the mortgage with money borrowed from his father, but that the mortgagee failed to collect the $600.00 at that time. Subsequently, the property was sold, in July or August, 1965, for $7,-800.00.
Campagna’s testimony as to how he became involved in the transaction is as follows :
“Q. You have heard the testimony this morning, who first contacted you about the sale of this property?
“A. Hamilton.
“Q. What did he tell you?
“A. He told me he wanted to use my name in order to remodel a house and be able to sell it.
*152 “Q. And what did you tell him?
“A. I agreed to go along with him.
“Q. And why did you do that?
"A. Well, he had been a friend for a long time, and financially he was in a pretty rough situation and he told me I might be able to make a few dollars out of it myself, so I went along with him. Actually, I didn’t know anything about house building or anything like that, I just had confidence in him.’.’
He further testified that he had no knowledge of any arrangement relative to the $600.00, and that all negotiations with plaintiff had been conducted by Hamilton. He further testified that prior to the date of the sale, he had borrowed $3,400.00 from another source to pay for the remodeling of the house, which had been started before that time. He repaid this amount out of the proceeds of the mortgage. Thereafter, he stated that he just forgot about the transaction, until January, 1965, when he was contacted by the mortgagee for payment of the note. He testified that he called both the plaintiff and Hamilton, and that neither of them would do anything. He then borrowed the money necessary to satisfy the note from his father, with the understanding that when the property was sold, he would sign the deed, but his father would receive the proceeds.
The testimony of plaintiff and that of Campagna are in direct conflict as it relates to their negotiations. As pointed out above, Campagna said that he had merely lent his name to the transaction because Hamilton’s credit was bad. Plaintiff testified that it was Campagna who made the arrangements relative to the $600.00, and that both he and Hamilton were familiar with all terms of the transaction.
The only other witness to testify was W. B. Bynum, president of the mortgagee corporation. He testified as follows:
“A. We do considerable interim financing for the relocation and necessary repairs on houses to be sold. I think I was approached by Mr. Hamilton first about helping him finance a house so that it could be sold and help him out financially. To the best that I can remember Mr. Hamilton had a judgment on him, one or more, and I could not of course take a mortgage in his name. So then, as I recall, he and Mr. Campagna — I know that Mr. Campagna’s credit passed or of course we wouldn’t have had it. That’s how it wound up in his name alone. We have a limit on amounts to be financed, based on what we think the value would be, and Mack Johnson agreed to sell them the lot for a stipulated amount — letting—well, I don’t know what happened between them — I know that I paid for half of the lot. I paid $600 for which I have the check if you want to see it, and it was understood that at the sale of the property there would be $600 over and above what they owed the Baton Rouge Securities Company to be paid to Mack Johnson. They completed the house and the matter drug along for some months without the house being sold and Mr. Campagna realized that he had charges accruing, he asked me for a net payoff, or maybe I gave it to him first. Anyway, we reached a net payoff and he brought me his personal check, as I recall it, and frankly, I was happy to get my money out of it and I just overlooked collecting for Johnson, or Mack’s Realty. So Mack later discovered that we had been paid off and he asked me about his $600 and of course I had to admit that I overlooked it. And I suppose that Mr. Cam-pagna did too. So that’s when I wrote Mr. Campagna and told him that we had both overlooked it and asked him to see Mack Johnson about it.”
He further testified that all of the parties to the transaction were fully aware of the situation relative to the $600.00, as outlined above in his testimony and that of plaintiff.
*153 The trial court found that since the deed recited that the entire consideration had been paid in cash, no parol testimony could be heard to contradict this fact, and therefore, plaintiff could not collect from Cam-pagna that which he had already acknowledged having received.
The sole specification of error is that the trial judge erred in failing to consider the parol evidence of the circumstances surrounding the transaction. The basic Louisiana law relative to parol evidence in such circumstances is as follows:
Article 2236
“The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
Article 2275
“Every transfer of immovable property must be in writing * * *."
Article 2276
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
As relates to the type of problem presented in this case, the Supreme Court in the early case of Forest v. Shores, 11 La. 416 (1837), held that parol evidence was not admissible to prove that a balance was still due the vendor in an authentic act, when the act on its face stated that the sale was made for cash.
In Queensborough Land Company v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201 (1915), the Court was faced with a situation in which the rescission of a sale was sought because of the violation of certain restrictive covenants. In connection therewith, it was alleged and proven that, although the price was cited in the act of sale as $350.00, the actual price was only $150.00. In deciding whether or not parol evidence was admissible to prove this discrepancy, the Supreme Court said the following:
“On the question of the admissibility of parol evidence to show that the real price was $150, and not $350 as stated in the act, we answer in the affirmative. The purpose of the offer is not to defeat the contract. The defeat of the contract will result, if at all, not from the breach of the condition of nonalienability. The purpose of the offer is simply to show what amount was received from Cazeaux and should be refunded to him. From that standpoint, the recital in the deed that the amount received was $350 is in reality nothing more than a receipt, and has no greater legal effect (Wigmore, Ev. par. 2433); and a receipt is always open to oral explanation (Id.- 1058).”
It appears that in so ruling, the Supreme Court relied on a common law rule which is in direct contravention of the codal authorities hereinabove set forth, insofar as authentic acts are concerned.
In the case of Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605 (1923), the Court was faced with a situation in which the recited consideration in the deeds in question in that case was $500.00, although it was contended by the plaintiff that they had paid a consideration of $606.-67. They attempted to prove this fact by parol testimony. In holding that the evidence was inadmissible, the Court said the following:
“The manifest purpose of the evidence was to show a greater consideration than that stated in each deed, in order to recover the excess, which, it is apparent, would increase the obligations of defendant under the deeds. This cannot be done, at least in the absence of a clear and specific allegation, which the petition herein does not contain, showing error in the confection of the instrument, or else fraud. Civil Code, art. 2276. Formento v. Robert, 27 La.Ann. 489; Chaffe v. Ludeling, 34 La.Ann. 962; Harrison v. Laverty, 8 Mart. (O.S.) 213, *154 13 Am.Dec. 283; Goodloe v. Hart, 2 La. 446; 22 C.J. § 1476, p. 1118.”
The Court found that the Queensborough case was not applicable, and included the following explanation in its opinion:
“In that case, the court admitted parol evidence, not to show that the amount of the consideration was different from that stated in the deed, but to prove the amount that the Queensborough Land Company actually received from Caz-eaux, and should therefore refund to him. That amount, it was contended, was less than the consideration stated in the act of sale and acknowledged therein to have been paid. The court reviewed the acknowledgment or receipt, in the deed, from the same standpoint that it would view any other receipt given for money paid, and on that theory ruled that the evidence was admissible, holding that one may go behind and overthrow a receipt with parol evidence. The court did not, however, hold that a different consideration in amount could be proved in such a suit by parol from that expressed or agreed to in the act of sale, which additional fact it is necessary to prove in the case at bar, and to prove which evidence amounting to nothing more than parol has been offered.”
Of course, whatever the holding in the Queensborough case may have been, it is limited by the explanation contained in the Brewer case. See Grimm v. Pugh, 197 So. 641 (La.App., 2 Cir. 1940).
In all of the cases in which the nullity of a deed is sought because of an alleged lack of consideration, and no fraud is alleged, all parol evidence tending to prove that fact has been excluded, and the Queensborough and Brewer cases have been either ignored or- overlooked. Lockwood Oil Co. v. Atkins, 158 La. 610, 104 So. 386 (1925); Johnson v. Johnson, 191 La. 408, 185 So. 299 (1938); Templet v. Babbitt, 198 La. 810, 5 So.2d 13 (1941); Harang v. Smith, 229 La. 865, 87 So.2d 10 (1956).
The Queensborough and Brewer cases appearently stand alone as cases in which it is sought to vary the consideration in a written instrument without attempting to nullify the instrument itself.
The Queensborough case stands alone as the only example of parol evidence being admitted to vary an authentic act in the absence of an allegation of fraud. We feel that it did not represent the law of this state either when it was rendered, or as explained by the Brewer case, and that it has since been impliedly overruled. We do not believe that the fact that the nullity of the deed was not sought in the Queens-borough case is a sufficient factual distinction to create a valid exception to the parol evidence rule. Either you can vary the terms of an authentic act by parol evidence, or you can not, and we do not believe that the purpose for which one seeks to do so should make any difference. We believe that the district judge properly applied the parol evidence rule in this case.
 However, we find that the agreement sought to be proved by parol evidence in this case does not relate to the deed in question. It is a new agreement made subsequent to the deed, and parol evidence is admissible to prove such an agreement. Cary v. Richardson, 35 La.Ann. 505 (1883). As a practical matter, plaintiff lent the money to defendants in consideration of receiving a listing at a higher commission than is normal, with the understanding that he would be repaid when the property was sold. A.ll funds were, in fact, disbursed by the mortgagee, and we cannot see how an exchange of checks by the parties would have altered the legal effect of the transaction.
We find that Campagna is liable for the debt. Even if his protestations of complete ignorance of the transaction are accepted at face value, he cannot escape the consequences of his own actions. He went into the deal with full expectation of making money out of it, and, judging *155 from his testimony, was fully familiar with how the funds which he borrowed were being spent. His name appears both in the sale and in the mortgage. Everything in the record except his own testimony points to his being a fully participating partner in the transaction. As such, he is liable for the debts contracted in connection therewith. The record shows that plaintiff was to receive $600.00 when the property was sold, and we find that he is entitled to judgment for this amount against both defendants.
Accordingly, the judgment appealed from is reversed insofar as it denies judgment against Campagna, and there will be judgment in favor of plaintiff and against both defendants, in solido, in the full sum of $600.00, with legal interest from date of judicial demand until paid, and all costs.
Reversed in part, affirmed in part, and rendered.