O’NIELD, C. J.
 

 This is a suit to rescind a sale for nonpayment of the price, or, in the alternative, to recover the unpaid part of the price. The suit includes also a demand for the value of certain chattels which were on the land when it was sold, and which the defendant afterwards sold and kept the price of. The demands were rejected, and the plaintiff has appealed.
 

 She is the defendant’s mother and has two other sons and a married daughter.- The property which she sold to the defendant was a farm of about 244 acres. The sale left her penniless, but it is not charged that the transaction was a donation in disguise and null as omnium bonorum. She was a widow, alone on the farm, and unable to manage it. There were two judgments recorded against her, amounting to $672.52, delinquent taxes amounting to $105.36, which had been paid partly by the sons and partly by friends to prevent a sale' of the farm, and perhaps there were other debts which the widow could not pay. In her distress, she made an agreement to transfer the farm to her son on condition that he would pay whatever debts she owed — the amount of which was estimated at $1,000 — take care of her and provide the necessary means for her support to the end of her life, and provide for her final place of rest. The consideration for the transfer was written in the deed thus:
 

 “One thousand dollars cash, the receipt of which is hereby acknowledged, and the further consideration of the furnishing of all things needful or necessary for the maintenance and support of said Mrs. Fannie P. Embry as long as she may live, including food, clothes, medí-' cines, nursing and all other attention, and a decent burial at her death.”
 

 The defendant mortgaged the farm for $1,000, and with the proceeds paid his mother’s debts. He and his wife and two children, a boy 14 and a girl 9 years old, moved on the farm, and the plaintiff lived there with him. He renovated the home, built a new tenant house and barn, cleared and fenced and put under cultivation a larger area of land, and without going further, into debt rehabilitated the old homestead.
 

 The new order of things went along happily for a while, but eventually the children began to annoy their grandmother; the boy being especially disrespectful and even cruel to her. She retaliated, and quarrels ensued between her and her son, in which he was sometimes inconsiderate and unkind to her.
 
 *883
 
 The quarrels culminated in a row between the grandmother and grandson, in which he lost his temper and violently took hold of her and threw her to the floor and hurt her back severely. She was confined to her bed for several days, and then got out and limped away to her daughter’s home, half a mile down the road, and refused to return to the farm. That was on the 22d or 23d of August, 1923. The plaintiff has remained under the care of her daughter ever since.
 

 The plaintiff, testifying in the case, virtually renounced all of her claims against the defendant except for the personal effects which she left in the house, and for $130 as the price of her cows and hogs and her interest in a mule which he sold, and for a monthly stipend sufficient for her support during the remainder of her life.
 

 The personal effects, which had very little value, were yet in the house at the time of the trial, and the defendant acknowledged that they were the plaintiff’s and were at her disposal. The debt of $130 for the chattels sold by the defendant was also virtually admitted. The defendant pleaded the prescription of three years against the debt; but the plea is not well founded because the property, and afterwards the price, was held by the defendant in a fiduciary capacity.
 

 The plaintiff is entitled also to have the defendant carry out his obligation to furnish her the necessary means for her support during the remainder of her life. In her petition she claimed $50 a month, but that is admitted to be more than it would cost either the defendant or the plaintiff’s daughter to support her. He was willing that she should return to his home and live there for the remainder of her life, and acknowledged his obligation and expressed a desire to make her comfortable and happy if she would live at his home. It is sufficient to say, without going into unpleasant details, that it is no fault of the plaintiff that' she cannot live in the defendant’s home. The fault is his and his son’s; and for that reason — -.if reason be necessary — the plaintiff's refusal to live in the defendant’s home does not relieve him of the obligation of his contract to provide for her support during the remainder of her life. The only question is how much should be allowed. The plaintiff is accustomed to humble living; and the defendant has other grave responsibilities. The adjustment ought to be made according to the intention which the parties had when they made the contract, as expressed in the contract or as determined by the circumstances of the case. The farm was worth about $3,000 at the time of the transfer-. Perhaps it could not have been sold readily at that price for cash, or for $1,000 in cash and the balance on terms bearing interest; but we have no doubt that it could have been sold at that price on the terms on which it was sold, provided the buyer could, in lieu of taking care of the seller, compute the unpaid $2,000 into monthly payments covering her life expectancy. The life expectancy at the time of the transfer — she being then 65 years of age — was 11 years and 10 days, say 132% months; which, divided into $2,000, would make the payments, in round figures, $15 a month. The price was not determined in the contract, but was determinable by adding to the $1,000 which, approximately, was paid in cash, $15 a month for the term of the life expectancy. That is the best solution we can make of the case, reserving to the defendant the right, within a reasonable time to be fixed, to recede from the- contract by returning the property, free from incumbrance, and by accounting for the rental value or revenues of the property, including the value of timber cut and sold, the sums received for two oil leases, etc., and by taking credit for the amount of the debts paid for the plaintiff at the ame of tne transfer, the cost of her support for the time she remain
 
 *885
 
 ed at defendant's home, the taxes paid, and the enhanced value of the property, resulting from the improvements made or put upon the property, etc.
 

 The judgment appealed from is annulled, and it is ordered, adjudged, and decreed that the plaintiff recover of and from the defendant $130, with legal interest from judicial demand, November 5, 1923, and the further sum of $15 per month from the 23d of August, 1923, and continuing as long as the plaintiff lives; the amount accrued to be collectible as soon as this decree becomes final, and the installments of $15 per month to be collected at the expiration of each month thereafter. The right is reserved to the defendant to elect, within 30 days from the date when this decree will have become final, whether to pay the amounts stated, or to rescind the sale dated the 6th' of September, 1923, and avoid payment of the foregoing judgment, by reconveying to the plaintiff, free of incumbrance, the farm bought from her, and by rendering and settling accounts with her .according to the foregoing opinion. The defendant is to pay all costs of this suit.