*366
 
 THOMPSON, X
 

 This case presents a contest between the Jonesboro State Bank, a mortgage creditor, and Mrs. Fannie P. Embry, a judgment creditor, for priority on the proceeds of the sale of certain land located in the parish of Jackson.
 

 The land was sold under a judgment of separation from bed and board in order to effect a partition, and to liquidate and settle the marital community existing between the parties named in the caption.
 

 The property sold for $1,951 cash and the assumption by the purchaser of a first ranking mortgage for $1,000 in favor of the Federal Land Bank of New Orleans.
 

 After the sale, the sheriff took a rule on the Jonesboro Bank and Mrs. Fannie P. Embry to show cause why the conventional mortgage of the former and the judicial mortgage of the latter should not be canceled from the mortgage records.
 

 In answer to this rule, both creditors agreed that the rule should be made absolute and the cancellation made as prayed for, and it was so ordered, reserving to the two creditors the right to claim priority over the proceeds.
 

 On a trial of the issue thus presented, the court recognized the mortgage of the bank as prior in rank to the-judgment of Mrs. Embry, and rendered judgment accordingly. On appeal to the Court of Appeal the judgment was reversed, and priority was given to Mrs. Embry.
 

 The case is before us for review on application of the Jonesboro State Bank.
 

 The question directly presented is whether the fund should be distributed according to the rank as shown by the mortgage records, or according to the rules applicable to onerous donations which have been judicially dissolved for noneompliance with the conditions imposed on the donee.
 

 The district judge applied the law of registry of mortgages, but the Court of Appeal considered the original deed from Mrs. Em- , bry to her son as an onerous donation subject to be dissolved for failure to comply , with the conditions imposed, and that as the property would have been restored to the donor free of incumbrances placed thereon by the donee, so should the donor receive the proceeds of the donated property in preference to any claims created thereon by the donee.
 

 A brief recital of the facts leading up to the partition sale and the conduct of the parties in their dealings with respect to the land is necessary to a proper understanding of the question at issue.
 

 Mrs. Embry, who appears in this proceeding as a judgment creditor, is the mother of R. J. Embry whose wife obtained a judicial separation and. a sale, of the land, the proceeds of which is the subject of this controversy.
 

 In 1917, the mother sold the land to her son for a recited consideration of $1,000 cash, and the further consideration that the son should furnish all things needful or necessary for the support of the mother as long as she may live, including food, clothes, medicine, nursing, and all other attention, and a decent burial at her death.
 

 It developed that the mother and her son , and his family could not live in peace in the same house, so the mother left and went to reside with a married daughter.
 

 In 1923, Mrs. Embry brought suit against her son to rescind the sale for reasons stated, in her petition, and in the alternative that she have judgment for $50 per month from October 23, 1923, as long as she lived. Her
 
 *368
 
 demands were rejected by tbe lower court, but on appeal to this court that judgment was reversed and judgment was rendered in favor of Mrs. Embry for $130 for some personal property disposed of by the son and for $15 per month from August 23, 1923, and to continue as long as Mrs. Embry should live. The judgment reserved the right to the son within a fixed time to avoid payment of the sums stated in the judgment by returning the land to his mother free of any incumbrances. Embry v. Embry, 163 La. 880, 113 So. 133.
 

 The son did not avail himself of the privilege allowed by the judgment, hence the title to the property completely vested in him subject to the rights thereon in favor of Mrs. Embry as allowed by the judgment.
 

 This judgment became final in May, 1927, and was filed for record in the mortgage office of Jackson parish on June 11, 1927.
 

 While the suit just referred to was pending in this court, R. J. Embry executed a mortgage on the land for $2,000 to secure a note payable to his own order. This mortgage was recorded in the mortgage office in December, 1926, some six months before the judgment of Mrs. Embry was recorded. The bank holds this mortgage.
 

 Young Embry having failed to make any payment on the judgment in favor of his mother, the latter caused an execution to be issued and the property to be s.eized and advertised for sale. The son sought to restrain the sale on the ground that he was entitled to a homestead on 160 acres of the land, or to the sum of $2,000 in case the land was sold.
 

 In answer to that demand, Mrs. Embry alleged that the debt in her favor represented a part of the purchase price and that, therefore, the homestead claim could not be pleaded against her debt. She prayed for the sale of the property under her judgment, and for the proceeds in preference to her son.
 

 The case was decided in her favor, and was appealed by the son to this court. After the record was filed in this court, the appeal was dismissed by consent- of all parties. There were no further steps taken by Mrs. Embry towards the sale of the land to pay her judgment.
 

 The wife of the son of Mrs. Embry obtained a judgment of separation from bed and board against him, and in that judgment it was ordered that the land should be sold subject to the mortgage of the Federal Land Bank and that the proceeds of the sale after payment of some legal charges and costs should be applied to the Jonesboro Bank mortgage and the balance, if any, to be paid over to Mrs. Embry.
 

 The property was sold under that judgment as community property of R. J. Embry and his wife. '
 

 From the facts stated, and which are shown by the record, it is perfectly apparent that the title to the land was vested in R. J. Embry under the judgment of this court cited supra, from and after he elected to keep the property and to pay the price as stipulated in that judgment.
 

 That title has been expressly recognized by Mrs. Embry in every proceeding in which she has sought to enforce her debt against her son on the property. When her son failed to make the payments as provided in the judgment, Mrs. Embry had two remedies, first, to sue to dissolve the sale recognized by this court for nonpayment of the price, and, second, to execute her judgment by seizure and sale of the property. She elected to seize and sell the property. For some reason not disclosed by the record, she released the seizure and abandoned the sale and permitted the
 
 *370
 
 property to be sold in the separation proceeding between her son and his wife.
 

 In none of the proceedings relating to this land since the judgment of this court in April, 1927, has any claim been made that the sale made by Mrs. Embry to her son in 1917 should be considered as an onerous donation.
 

 On the contrary, the said instrument and the judgment of this court has been considered as vesting title to the land in her son, with the obligation on the son to pay the price as fixed in the judgment.
 

 In the answer filed in the proceeding by the sheriff to cancel her mortgage resulting from the judgment, Mrs. Embry recognized the property as belonging to her son, and she has ratified the sale so made by claiming the proceeds of such sale and consenting to have the land itself released from any claim arising in her favor under her judgment.
 

 In view of these facts, it is impossible to conceive of any just or legal reason why the transaction between mother and son should be treated as an onerous donation in order to give to the mother priority over a mortgage placed on the property by the son while title vested in him.
 

 If Mrs. Embry ever had the right to have the instrument declared to be an onerous donation, and to have the property returned to her unincumbered, that right ceased and was lost to her when the judgment of this court was rendered' in April, 1927.
 

 She cannot now, in a contest over the proceeds of the property, be heard to claim a priority because she might have had at one time the right to revoke the instrument as a donation, and have the property returned to her free of incumbrances.
 

 ' The legal status of the property has changed. The property has been sold as the property of her son with full acquiescence and ratification on her part. She no longer has any rights on the property. The statu quo. cannot be restored and she must look to the proceeds for the’ payment of her claim, and the claim can only be paid according to the rank as shown by the mortgage records.
 

 The case of Baker v. Baker, 125 La. 969, 52 So. 115, has no application. That was a direct suit to revoke an admitted donation and to recover the property free of incumbrances placed on it by the donee. In that case, the title depended on the payment by the donee to the donor of an annual sum of $500.
 

 The payments were not made, and the court set aside the donation free of incumbrances.
 

 How different is the situation here presented. There is no donation here to be revoked, and no one is asking to have a donation revoked.
 

 The contest is over the proceeds of the property, and it makes no difference whether . the title to the property passed to R. J. Em-. bry by a donation or by a sale.
 

 Some discussion has been made on both sides as to the effect of the failure to record a notice of the pendency of the suit between Mrs. Embry and her son in which the title to the land was involved, as provided for in Act No. 22 of 1904.
 

 We do not find it necessary to consider that question.
 

 If a notice had been given as required by the statute,' its effect as a notice would have ceased when the judgment was rendered placing the title in R. J. Embry.
 

 Section 3 of the act declares that if the judgment be against the plaintiff, it shall provide for the cancellation of the notice.
 

 
 *372
 
 The judgment rejected the demand of Mrs. Embry to have the sale rescinded, and decreed, in effect, the title to be in the defendant in that suit.
 

 The most that can be said, therefore, is that the mortgage creditor took the mortgage at his risk and peril during the pend-ency of the suit in which the title was involved.
 

 If the suit had terminated in favor of the plaintiff, then the want of registered or actual notice would have become of some importance.
 

 As it is, however, the title was held to be vested in R. J. Embry, hence, while the mortgage of the bank might have been dormant during the pendency of the suit, it certainly revived and became a legally registered mortgage with rank and priority over any mortgage or judgment recorded subsequent to the finality of the judgment placing title in, the mortgage debtor.
 

 The judgment of Mrs. Embry having been recorded long after the mortgage in favor of the bank, there is no other alternative but to recognize the priority of the bank as regulated by law.
 

 If hardship results to Mrs. Embry, the blame should rest with her and not with the courts or the law.
 

 She gave her property to her son and placed it in his power to mortgage of alienate to her prejudice, without taking the necessary steps to protect herself by proper registry.
 

 The judgment of the Court of Appeal is reversed, and set aside, and that of the district court is reinstated and made the final judgment of this court. The costs of appeal to be paid out of the funds in controversy.