LEMMON, Judge.
Victory Temple Assembly of God, a Louisiana non-profit corporation, has appealed from a judgment dismissing its action for nullity of an earlier default judgment in favor of Louisiana District Council of the Assemblies of God, Inc., another Louisiana corporation. The focus of Victory Temple’s attack on the default judgment is the District Council’s use of substituted service on the Secretary of State.

Facts

Victory Temple, which was chartered in 1953, applied in 1955 for affiliation with the General Council of the Assemblies of God and in due course was officially recognized. After several years of successful operation in one location, Victory Temple purchased a parcel of immovable property and constructed a church building thereon.
In June, 1976 the District Council, claiming to have administrative and supervisory authority over affiliated assemblies, adopted a resolution to assume administrative responsibility for Victory Temple, declaring that Victory Temple was without a pastor, *170 had suffered substantial loss in membership, and had failed to meet the responsibilities of its affiliation. On July 23, the District Council’s superintendent sent a notice of this resolution to “Victory Temple, Inc., c/o Mr. Irwin Adams, Transcontinental and Kawnee Sts., Metairie”.
In response to notice of this resolution and to a subsequent phone call by the District Council’s superintendent to the secretary of Victory Temple, Ralph Adams of Victory Temple (Irwin Adams’ brother) wrote a letter on September 24, 1976 to the District Council, explaining that Victory Temple had voluntarily entered into cooperative fellowship, but had long since dissolved the relationship. The letter was on a letterhead which read “Victory Temple, Transcontinental at Kawanee” at the top center and which listed the mailing address at 4840 Meadowdale (Victory Temple’s secretary’s address) at the top right.
In July, 1977 the District Council filed a suit to enjoin Victory Temple from resisting its exercise of supervisory and administrative authority, alleging that certain members of Victory Temple’s congregation had asserted control over the immovable property and had caused the withdrawal of many members and the resignation of the approved pastor. The District Council concurrently filed a notice of lis pendens, asserting that the suit involved a dispute between the parties as to the “control” of the immovable property described therein. Service was requested on the two registered agents named in the original charter and on Ralph Adams (the person who had written the September 24, 1976 letter to the District Council and who had been identified by Victory Temple’s secretary as the current pastor). When the process server was unable to locate Adams (who had moved) or the registered agents (who were deceased), the District Council requested service pursuant to C.C.P. art. 1261 on any officer, director, resident agent or employee of the corporation at the place where the corporate business was regularly conducted. The process server was unable to find anyone at the church building on six weekday trips there, and the District Council therefore requested service on the Secretary of State pursuant to C.C.P. art. 1262. Service was effected on August 22, 1977, and a copy of the petition, mailed by the Secretary of State to one of the deceased agents for service of process, was returned unserved because there was no such street number. The Secretary of State then informed the District Council of the development and requested a more recent address, if available.
The District Council entered a preliminary default, which was confirmed on October 5, 1977, and the trial court rendered a judgment permanently enjoining Victory Temple from resisting the District Council’s exercise of administrative and supervisory authority.
On November 18, 1977 Victory Temple filed a petition to annul the October judgment, complaining among other things that service through the Secretary of State “was done in defraud of petitioner’s rights” in that no reasonable efforts were made to locate and serve Victory Temple officers in light of information known by the District Council’s officers. After a trial on the merits the nullity action was dismissed, and Victory Temple appealed.

Merits of Nullity Action

A final judgment may be annulled for vices of either form or substance. C.C.P. art. 2001. Grounds for nullity for vices of form include rendition of a judgment against a defendant who has not been served with process as required by law. C.C.P. art. 2002(2). Furthermore, nullity may also be demanded for vice of substance when judgment has been obtained by fraud or ill practice. C.C.P. art. 2004. The essence of Victory Temple’s position is (1) that there was no valid service on the Secretary of State under C.C.P. art. 1262 because there was no prior “diligent effort” to serve an officer or employee of Victory Temple and (2) that the use of substituted service under the overall circumstances of this case constitutes an ill practice.
C.C.P. art. 1261 permits service of citation, when a domestic corporation’s agent for service of process has died, to be made *171 at any place where the corporation’s business is regularly conducted, by service on an officer, director or resident agent or on any employee of suitable age and discretion. If the process server is unable after diligent effort to make such service, then service may be made pursuant to C.C.P. art. 1262 on the Secretary of State, who must forward the citation to the corporation’s last known address.
The process server’s six attempts of service at the church building perhaps numerically constituted diligent effort, but service at a corporation’s regular place of business arguably must be attempted during regular business hours, which for a church corporation would normally be on a Sunday morning. In this case there was no attempt to effect service on a Sunday morning and no evidence of an effort by the process server to determine from neighbors the hours of church services. Moreover, the District Council not only did not instruct the process server to attempt service on Sunday morning, but also provided only the skimpiest of information to the process server and to the Secretary of State in the light of the knowledge of the District Council’s officers and the ready availability of better information necessary for a truly diligent effort at service.
The District Council’s superintendent and his assistant handled all dealings with the attorneys, and both testified at the hearing on the default judgment. At the subsequent trial of the nullity action the superintendent admitted that he had called Adams’ sister (who was Victory Temple’s secretary) in 1976 and had been informed that Adams was the pastor and that services were being conducted every Sunday; that he did not call Adams’ sister about his whereabouts when the process server was unable to locate Adams; that he did not attempt to determine the hours of church services from her when the process server was requested to attempt service at the church; that although the September, 1976 letter from Adams contained Victory Temple’s mailing address (Adams’ sister’s home) on the letterhead, he did not refer to this source of information when attempts at service failed; and that he knew Adams’ cousin, aunt and uncle, but did not inquire of them as to Adams’ whereabouts. The assistant superintendent, who had known Adams for 15 years, knew Adams’ cousin, aunt and uncle (who was listed in Victory Temple’s charter as an incorporator and a member of the original board of trustees) were members of his congregation and knew his associate pastor was married to Adams’ cousin, but he did not attempt to determine Adams’ whereabouts from any of them. Neither the superintendent nor his assistant instructed their attorney or the process server to attempt service on Sunday mornings. Evidently no one wrote to Adams’ former address (he had registered a forwarding address and was still receiving forwarded mail at time of trial). And when the Secretary of State requested more current information after his notice to the deceased registered agent was returned because there was no such street address, neither the superintendent nor the attorney furnished the corporation’s “last known address” (where the statute requires the Secretary of State to forward the citation) nor attempted to determine any information so that actual notice could be provided.
Several members of Victory Temple’s congregation testified that services were conducted at the church building every Sunday and on some weekdays. Other evidence showed that the church was supplied with electricity, gas and water, but apparently no inquiry was made of the utility companies as to the mailing address for the utility bills.
Although the District Council argues that it complied with the literal terms of the codal articles and that mere service on Adams would not have fulfilled codal requirements, the purpose of the codal scheme of substituted service is to provide a method reasonably calculated to give notice so as to fulfill constitutional due process requirements. However, since the reason for service is to provide the defendant with notice and an opportunity to be heard, the use of substituted service is only applicable when actual notice is not reasonably available.
*172 Furthermore, in this case the nature of the proceedings and of the relationship between the parties are extremely important factors. A default judgment based on substituted service seems unusual in any injunction proceedings. And although Victory Temple and the District Council were affiliated at one time, this suit basically involves an attempt by one who apparently has no voting rights in the corporation to take control of the corporation and its immovable property from those who claim to be directors and to hold the voting rights.[1] This is hardly the type of action in which one would expect a default judgment based on substituted service.
Moreover, during the period of antagonism in which Adams’ control of Victory Temple was questioned, the District Council apparently had no difficulty in contacting Victory Temple’s officers or congregation members. In the light of these considerations it appears unjust and inconsistent with the intent of the codal articles on substituted service to allow the District Council to obtain a default judgment purporting to grant control over the Victory Temple corporation and its property in the absence of more diligent efforts to provide actual notice and particularly in the absence of any attempt at service on a Sunday morning.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered annulling the default judgment of October 5, 1977. Costs of this appeal are to be equally divided.
REVERSED AND RENDERED.

. Evidently the control of the immovable property is the principal dispute between the parties. The District Council claims that labor and materials to construct the building were donated in reliance on Victory Temple’s continued affiliation. The decision of the merits would seem to depend upon whether the deed or the corporate charter or constitution contain language of trust in favor of the general church, as was recently decided in Jones v. Wolf, - U.S. -, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). However, the merits of the original action are not before this court in this appeal in the nullity action.