WICKER and GOTHARD, Judges,
dissenting.
We dissent. Victory Temple Assembly of God, (Victory Temple) filed a mandamus proceeding to compel defendant, Recorder of Mortgages for the Parish of Jefferson, to cancel and erase from the parish records the inscription of a collateral mortgage. The holder, Ralph Miller, intervened in the proceeding. Victory Temple moved for and was granted a summary judgment which ordered the erasure and cancellation of in-tervenor’s collateral mortgage. The evidence in support of the judgment consisted of the record of prior litigation involving Victory Temple and its property.
The majority believes this prior litigation did not foreclose an inquiry into the authority of the mortgagor to grant intervenor’s mortgage and its consequent validity. It is our opinion that ownership and, more importantly, control of Victory Temple’s property has been addressed and resolved against intervenor’s mortgagor. (It is conceded by all parties that Victory Temple owns the property.) An understanding of this litigation makes it clear that the issue of authority and control over this church property was the issue before the various trial and appellate courts.
*324 The original litigation began July 7,1977, when the Louisiana District Council of the Assemblies of God, Inc. filed suit against Victory Temple, asserting administrative authority over Victory Temple and asking that it be enjoined from resisting the exercise of this administrative and supervisory control. (Louisiana District Council of the Assemblies of God, Inc. v. Victory Temple Assembly of God, Proceedings # 202-438 “C”, 24th Judicial District Court for the Parish of Jefferson) A proper notice of lis pendens was filed in the mortgage records of Jefferson Parish the following day describing immovable property owned by Victory Temple and located at Transcontinental Drive and Kawanee Street in Metairie. This is the immovable property which intervenor’s mortgage encumbers. Judgment was taken by default. The few remaining members of Victory Temple (Ralph Adams, Estelle Adams, Gloria Castanza, Barbara Swan, and others— the Adams Group) then learned of the default judgment. Those members, claiming to act as and on behalf of Victory Temple, filed suit on November 16, 1977 to annul the judgment. Intervenor was counsel of record for the Adams Group. The judge below refused to nullify the judgment and injunction obtained by the District Council, and the Adams Group took a devolutive appeal. While this appeal was pending, the Adams Group filed a quo warranto proceeding against the Louisiana District Council, (The Rev. Ralph Adams & Victory Temple Assembly of God v. The Rev. Cecil Thomas Janway & Louisiana District Council of the Assemblies of God, Inc., Proceedings # 214-013 “E”, 24th Judicial District Court for the Parish of Jefferson) demanding to know by what authority the District Council had taken control of Victory Temple. The quo warranto, consolidated with the earlier action, was denied and appealed; and the Adams Group filed its notice of lis pendens describing the same immovable property. The Fourth Circuit on September 20,1979, reversed the nullity and quo warranto judgments of the court below for reasons not germane to the matter before this court. Louisiana District Council of the Assemblies of God, Inc. v. Victory Temple Assembly of God, 376 So.2d 169 (La.App.1979). It remanded the two consolidated cases for trial on the merits to determine whether the Louisiana District Council or the Adams Group was rightfully entitled to exercise authority and control over Victory Temple.
The District Council, claiming to act as Victory Temple, then filed suit against the Adams Group and the unincorporated association formed by the Adams Group, Victory Temple, Inc., on November 20, 1979, asking for a declaratory judgment on the basic issue: the right of the District Council to exercise authority and control over Victory Temple. {Victory Temple Assembly of God, Inc., Louisiana District Council of the Assembly of God, Inc., Present Members of Victory Temple Assembly of God v. Ralph Adams, Estelle Adams, Gloria Castanza, Barbara Swan & Victory Temple, Inc., proceedings #232-908 “M”, 24th Judicial District Court for the Parish of Jefferson) The Adams Group responded by asking the court below, in the original proceeding # 202-438, to enjoin the District Council from exercising any authority and control over Victory Temple. Ultimately, both the District Council and Adams Group claimed authority to act as and on behalf of Victory Temple. All three pending actions were tried on March 10, 11, 12, and 16, 1981. Intervenor was and remained counsel of record for the Adams Group throughout. The two notices of lis pendens remained of record throughout as well.
During the trial, but before judgment, the Adams Group executed a $100,000.00 demand note and a collateral mortgage on the church property in favor of “any person, firm, or corporation.” The purpose of the note and collateral mortgage securing it was to pay for legal and other expenses in connection with the pending actions.
The trial court’s decision on June 12, 1981, in favor of the District Council held:
.... Victory Temple Assembly of God is part of the hierarchical Assembly of God organization, and this Court must respect the determinations of the Louisi *325 ana District Council concerning matters of conduct, discipline, doctrine and administration. The Louisiana District Council determined to exercise supervisory authority and administrative control over Victory Temple Assembly of God pursuant to its Constitution and ByLaws, and this determination must be upheld by this Court.
The court held in favor of the District Council and its authority and control over Victory Temple and its property,
declaring valid and confirming the exercise of administrative and supervisory control over Victory Temple Assembly of God by the Louisiana District Council of the Assemblies of God, Inc., and enjoining the defendants, Ralph Adams, Estelle Adams, Gloria Castanza, Barbara Swan and Victory Temple, Inc. (the Adams group), and all persons acting or purporting to act in their behalf, from interfering or resisting the exercise of administrative and supervisory control over Victory Temple Assembly of God by the Louisiana District Council of the Assemblies of God, Inc., from interfering with the efforts of Victory Temple Assembly of God to perform its proper functions as an Assembly of God affiliated with the Louisiana District Council of the Assemblies of God, Inc., from interfering with the services conducted by the present congregation of Victory Temple Assembly of God, and from attempting to exercise dominion over the church property located at the comer of Transcontinental and Kawanee in Metairie, Louisiana. (Emphasis added).
The Fifth Circuit affirmed and noted “that Adams and his family members made no serious showing that they were the rightful owners of the church or church property” and that they “had no vested or assumed right to exercise control.” Louisiana District Council of Assembly of God, Inc. v. Victory Temple Assembly of God, 427 So.2d 662, 665 (La.App.1983). The Supreme Court denied writs on April 23,1984, terminating the litigation between these parties. (449 So.2d 1343). This decision extinguished any claimed right on the part of Ralph Adams or the Adams Group to mortgage or alienate the church property in any manner. L.S.A.-C.C. art. 3300.
The trial judge in the instant matter, referring to the “pleadings, the entire record in this matter and the argument of counsel” and finding no genuine issue as to any material fact, rendered judgment can-celling and erasing the collateral mortgage.
Victory Temple urges that an inquiry into the validity of intervenor’s mortgage is precluded for two reasons: (1) the previous litigation which held that the Adams Group had no authority and control over the church property, and (2) the existence of two notices of lis pendens affecting this property.
THE EFFECT OF THE NOTICE OF LIS PENDENS
Our controlling legislation is L.S.A.-C.C. art. 2453:
The thing claimed as the property of the claimant cannot be alienated pending the action, so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another’s property, and does not prevent him from being put in possession by virtue of such judgment. Nor shall it be lawful for debtors or third possessors of property, subject to a mortgage of any kind, to transfer or alienate such property, pending an action to enforce the mortgage, and any transfer or alienation made in contravention of the provisions of this article, shall have no effect as against the plaintiff, or plaintiffs, in such pending action.
Purchasers and mortgagees of property are charged with notice of pending litigation if that notice is filed of record. L.S. A.-C.C.P. 3751. The purchaser or mortgagee then acquires the property at his peril, “subject to this suit and is bound by whatever judgment that is rendered.” Ebarbo v. Stacey, 16 La.App. 248, 133 So. 793, 795 (2d Cir.1931). Accord: Embry v. Embry, 170 La. 363, 127 So. 869 (1930).
There were two recorded Notices of Lis Pendens, one of which was filed by inter-venor as attorney of record for the Adams *326 Group, when this mortgage was executed. The issue, therefore, is the effect of those recorded Notices of Lis Pendens, if any, on the rights of intervenor under the mortgage in question.
“The Article [C.C.P. art. 3751] is clear that the purpose of the notice is to apprise third parties that someone is asserting a privilege or lien by legal proceeding on the property described therein.” Miller v. Justice, 299 So.2d 558, 560 (La.App. 4th Cir.1974). Accord: Abadie v. Oubre, 467 So.2d 1384 (La.App. 5th Cir.1985), writ denied 472 So.2d 30 (La.1985). In addition to the constructive notice afforded by recordation, intervenor had actual notice in that he was the attorney of record for one of the parties and prepared and filed one of the recorded notices.
The jurisprudence of this state holds that one who purchases property which is the subject of litigation, and where there is a recorded Notice of Lis Pendens, does so at his risk and subject to the outcome of that litigation. In Citizens’Bank of Louisiana v. Armor, 11 La.Ann. 468 (Orleans 1856), the defendant in a suit to determine the ownership of certain immovable property mortgaged that property pending the litigation. The holders of that mortgage sought to enforce it. The court held:
By Article 2428 [now L.S.A.-C.C. art. 2453] of the Civil Code, a thing claimed by suit cannot be alienated, pending the suit, by the defendant, to the prejudice of the claim of plaintiff. Mortgage is a quasi-alienation.[1] At page 469.
Accord: Bickham v. Bethany, 187 La. 709, 175 So. 465 (1937).
In the case of Ebarbo v. Stacey, supra, the Second Circuit held:
But one cannot be permitted to circumvent the rights of the plaintiff by simply selling the thing in dispute. When the Federal Land Bank of New Orleans foreclosed its mortgage against the defendant Stacey, it did not defeat plaintiffs possessory action already filed against him. It bought the property in at the sale subject to this suit and is bound by whatever judgment that is rendered. The same thing applies to defendant Anderson [the purchaser/third possessor], who bought from the bank. He bought the land subject to the outcome of this suit. At page 795 (Emphasis added).
The Supreme Court has also held, Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605, 607 (1923):
When defendant sold to plaintiffs there was pending against it the Leader Realty Company Case, and there was of record in the office of the recorder of mortgages a notice of lis pendens in that case. Hence, whether right or wrong, the decree in the Leader Realty Co. Case is binding on plaintiffs and defendant herein, insofar as concerns the lots in question. (Citations omitted).
Therefore, when defendant sold to plaintiffs, it sold the property of another. What applies to conveyances applies as well to encumbrances. Rau v. Lacoume, Man.Unrep.Cas. 58 (1880). Such sales (or mortgages) are null. L.S.A.-C.C. art. 2452.
There being no question that two notices of lis pendens were filed of record at the time the Adams Group executed a mortgage on the property owned and controlled by Victory Temple, we believe that inter-venor’s rights under that mortgage are subject to the outcome of the previous, final litigation among the District Council, Victory Temple, and the Adams Group. In-tervenor, having taken a mortgage on property affected by pending litigation, is bound by the results of the litigation which held that intervenor’s mortgagor had no authority “over the church property.” Any transaction concerning that property must then be a nullity.
*327 The church property has been encumbered by litigation for nearly ten years. We cannot see what possible additional facts could be introduced at yet another trial on the issue of ownership, authority and control over this property. Consequently, we believe that the summary judgment was properly granted and that nothing could be served by prolonging this litigation.

 "[Mortgage] creates a real right upon the property. .. .and to that extent it is an alienation of it. And that is why the legal capacity to mortgage must be the same as that to alien-ate_"
Fidelity Credit Company v. Winkle, 251 La. 1, 202 So.2d 280, 286 (1967).